Alexander F. KOSHOREK, Appellant,

v.

The PENNSYLVANIA RAILROAD COMPANY.

No. 13814.

United States Court of Appeals Third Circuit.

Argued April 2, 1962.

Reargued Nov. 23, 1962.

Decided May 29, 1963.

Rehearing Denied July 16, 1963.

Kenneth Syken, Richter, Levy, Lord, Toll & Cavanaugh, Philadelphia, Pa. (Edward L. Wolf, Philadelphia, Pa., on the brief), for appellant.

Matthew J. Broderick, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee.

Before BIGGS, Chief Judge, GANEY, Circuit Judge, and SHERIDAN, District Judge.

BIGGS, Chief Judge.

This is an appeal by the plaintiff-appellant, Koshorek, from a judgment based on a jury verdict in favor of the Railroad Company [1] and the denial of his motion for a new trial.[2] The case arises

1. Koshorek v. Pennsylvania R. R., Civ. No. 25099, E.D.Pa., June 1, 1961. No opinion was reported for publication. The case was tried by the late Judge Thomas C. Egan.

2. Koshorek v. Pennsylvania R. R., Civ. No. 25099, E.D.Pa., Sept. 26, 1961. No opinion was reported for publication. Judge Egan died on July 6, 1961. Judge Ganey, at that time the Chief Judge of

under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

Koshorek, 65 years old at the time of the trial, had been employed by the Railroad for a period of 34 years, the last 18 of which were spent as a car repairman in Passenger Shop Number 1 at Altoona, Pennsylvania. Late in 1957 he began to develop symptoms that indicated possible lung disease and in January of 1958 he stopped work.[3]

The suit at bar rests on the theory that repair operations conducted in the passenger shop raised dust and sand into the air in sufficient quantities to create a silica hazard and that the Railroad had been negligent in failing to mitigate or prevent this hazard. Koshorek contends that his lung condition, diagnosed as pulmonary emphysema and fibrosis[4] was attributable to silicosis contracted as a result of exposure to the silica hazard.

The evidence at the trial on the issue of whether a silica hazard had existed in the shop was sharply conflicting. Koshorek testified that metal covering plates on the bottoms of railroad cars were customarily dropped to the floor of the shop in order to gain access to the underside of the cars for repairs and that large amounts of dirt and sand were caused by this to fly into the air. He also stated that high pressure air hoses were used inside the shop for cleaning the cars, causing clouds of dust to circulate, and that the air inside the building was dusty and cloudy on several occasions. Other employees, however, testified that the operations referred to were rarely if ever performed inside the building, that the air was clear and shop well-ventilated, and that respirators were always available in the event they might become necessary, though Koshorek had never asked for one.

The medical evidence also was somewhat inconclusive, although the diagnosis of Koshorek's condition as pulmonary emphysema and fibrosis was generally agreed upon. His medical experts testified that his condition was due to silicosis which in turn had been caused by exposure to the alleged silica hazard in the shop. On cross-examination, however, these witnesses admitted that they had not made any actual dust studies of the air in the shop and, further, that the fibrosis could have been caused by many things other than silicosis. Medical experts called by the Railroad stated that Koshorek was not suffering from silicosis and that his lung condition had been caused by the inhalation of coal dust[5]

the United States District Court for the Eastern District of Pennsylvania, assigned the case and Koshorek's motion for a new trial to Judge John W. Lord, Jr., by an order entered August 17, 1961.

3. Koshorek testified that he stopped working on January 7, 1958, and on the same date was admitted to the Veterans Hospital in Altoona, Pennsylvania where he remained until March 3, 1958. He was then transferred to the Veterans Hospital in Pittsburgh and remained there until April 5, 1958, during which time an operation was performed on his lung. Intermittent periods of hospitalization occurred during the following few months.

4. Pulmonary emphysema "is a condition wherein air is trapped in portions of the lung, with permanent dilation of the alveoli, or sacs at the ends of bronchiales. It is due to closure of the air passages from * * * severe destructive process." 2 Gray, Attorneys' Textbook of Medicine § 138.10, at p. 1473 (1961 ed.).

Pulmonary fibrosis is the formation of scar tissue within the lung. See 2 Gray, supra, at § 132.05, p. 1365.

5. An employment record, introduced into evidence by the defendant without objection, showed that Koshorek had been employed as a miner by the Cambria Smokeless Coal Company from September, 1919 until July, 1923. This record indicated, however, that Koshorek worked only a total of three months in 1919, seven and one-half months in 1920, the full year in 1921, four months in 1922, and six months during 1923. Koshorek testified on cross-examination that his duties in connection with this employment involved "rip blasting" with steel grit, and that he used a mask and hood with an air line while performing this work.

Dr. Martin Wendkos testified that in his opinion, based on a personal examination of Koshorek, the plaintiff was suffering from anthracosilicosis rather than

and was not causally related to any work performed while in the employ of the Railroad.

■ Koshorek contends that the trial court committed error in refusing his request that the jury be instructed that he did not assume the risks of his employment.[6]

Judge Egan charged the jury on the issue of comparative negligence, instructing them that even if they should find Koshorek to have been negligent this would not bar his recovery but instead would mitigate the damages,[7] but the court's instructions did not distinguish the doctrine of comparative negligence from that of assumption of risk. In fact, no reference to assumption of risk was made at all, either by name or in substance. Koshorek had requested the court to define the doctrine of assumption of risk and to charge that under the Federal Employers' Liability Act assumption of risk could not constitute a full or even a partial defense.[8] The court denied this request, stating that the point had been adequately covered by its charge as to the Railroad's affirmative duties.[9] We think a more detailed

---

silicosis. He defined the former as over-distention of the lung with deposits of coal dust particles.

6. Koshorek's requested point for charge was properly submitted and his objections to the charge as given were timely made in accordance with Fed.R.Civ.P. 51, 28 U.S.C.A. See Montgomery v. Virginia Stage Lines, 87 U.S.App.D.C. 327, 191 F.2d 770, 773 (D.C.Cir. 1959).

7. "If you find that the defendant is responsible for the plaintiff's disability, you will also consider the question of whether the plaintiff himself was guilty of negligence and contributed by his own negligence to his lung condition.

"* * * [T]he defendant has the burden of convincing you by a fair preponderance of the evidence that the plaintiff was guilty of negligence and that his negligence was also a cause of his disability.

"As I said before, the term 'negligence' means the doing of an act which a reasonably careful person would not do or the failure to do an act. * * * [I]t is the failure to use ordinary care under the existing circumstances.

"Even if you find that the plaintiff was guilty of negligence and that such negligence was a cause of his disability, this negligence would not bar any recovery on his part. It would merely serve to decrease the amount of damages. This legal concept is known * * * as the comparative negligence rule. * * *

* * * * *

"Therefore, if you decide that the plaintiff's own negligence helped cause his disability in conjunction with the defendant's negligence, then your verdict would still be for the plaintiff, but you would reduce the amount of his total damages by such a percentage as you find that his negligence, if any, contributed to * * * his disability * * *."

The plaintiff made a timely objection to this point in the charge on the grounds that comparative negligence was "not within the case as a matter of law." The objection was overruled and an exception granted, but the plaintiff does not urge this point in the appeal at bar.

8. The requested charge was as follows: "You are instructed that under the Federal Employers' Liability Act, the plaintiff does not assume any of the risks of his employment. By this I mean that the plaintiff does not assume any of the risks of the railroad's failure to use reasonable care to supply him with a reasonably safe place in which to work, or to be assigned to work in an area where silica is in an unreasonable concentration, or remain in this area to perform his assigned duty and be exposed to an unreasonable concentration of silica. The railroad would still be liable for its failure to supply him with a safe and reasonable place to perform his duties."

9. "The Court: I will adhere to my original ruling and refuse to so charge. I think it is adequately covered and properly covered in my charge. I will allow you an exception.

"Mr. Wolf: Sir, if I may state, so that there is no question on the record, you have not charged at all on the assumption of risk.

"The Court: I understand that is your position. I charged, not by calling it names which would mean nothing to this jury, but I have charged positively that the railroad was obliged to give him a safe place in which to work and that it was charged with knowing whether there was an unsafe condition there and whether that brought about the plaintiff's con-

explanation to the jury than that given by the trial court was required under the circumstances of this case.

The doctrine of comparative negligence has been a part of the Federal Employers' Liability Act since its original enactment. See 45 U.S.C.A. § 53.[10] The original Act also incorporated the doctrine of assumption of risk, which provided a full defense for the carrier except in cases where the injury resulted from the carrier's violation of safety statutes. 35 Stat. 66 (1908).[11] In 1939, however, the Act was amended and the defense of assumption of risk abrogated in all cases where the injury resulted from the negligence of the carrier. 53 Stat. 1404 (1939), 45 U.S.C.A. § 54.[12] See Tiller v. Atlantic Coast Line R. R., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943); Atlantic Coast Line R. R. v. Burkett, 192 F.2d 941 (5 Cir. 1951.) [13]

■ The retention of the doctrine of comparative negligence and the abrogation of the defense of assumption of risk necessitates that a careful distinction between the two concepts be made in a case such as that at bar arising under the Act. If Koshorek's own conduct in relation to his injury be characterized as contributory negligence the Railroad may have a partial defense as to the amount of damages. If the same conduct be found to have constituted assumption of risk Koshorek's right to recover could not be affected in any respect. In Prosser, Torts § 55 (1955), 304–305, it is stated: "* * * [W]here the two de-

fenses overlap, there is a great deal of confusion of the two. Ordinarily it makes little difference which the defense is called. The distinction may become important, however, under such statutes as the Federal Employers' Liability Act, which has now abrogated the defense of assumption of risk entirely, but has left, contributory negligence as a partial defense reducing the amount of recovery. In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. The two may co-exist, or either may exist without the other. The difference is frequently one between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care." See also Potter v. Brittan, 286 F.2d 521 (3 Cir. 1961).

The Railroad relies on Seaboldt v. Pennsylvania R. R., 290 F.2d 296 (3 Cir. 1961), in support of the position that assumption of risk was properly not included in the trial court's charge to the jury. It is urged that assumption of risk was not a defense nor was it even mentioned in the trial of the case at bar and therefore would not be a proper subject of instruction to the jury.

---

dition. I think that is adequate. I will allow you an exception to my failure to so charge."

10. "* * * [T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *."

11. "* * * [The] employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of em-

ployees contributed to the injury * * * of such employee."

12. The 1939 amendment added the following to the text of the section cited in note 11, supra: "[Or] where [the] injury * * * resulted in whole or in part from the negligence of any of the officers, agents, or employees of [the] carrier * * *."

13. In Tiller, supra, at p. 58, 63 S.Ct. at p. 446, Mr. Justice Black stated: "We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment * * *."

In Seaboldt the plaintiff employee had been injured as a result of straining to open a gate leading to a track siding. The trial court's charge to the jury included an instruction on contributory negligence. The plaintiff's attorney excepted to that portion of the court's charge, claiming that the judge had confused contributory negligence with assumption of risk " 'which is no defense under the statute.' " The trial judge then gave an additional instruction to the jury: " 'I want to say to you that this plaintiff does not assume any risk of his employment. The doctrine of assumption of risk has been abolished. There is no assumption of risk in his employment.' " An additional instruction on the definition of assumption of risk was given immediately before the jury retired in response to a question from one of the jurors. Verdict and judgment were rendered for the plaintiff, and the defendant railroad appealed. We reversed the trial court and remanded the case on grounds other than the alleged error in the charge to the jury. Judge Goodrich stated, however, that, "It was unfortunate to bring in this business of assumption of risk at this stage of the case. No one had mentioned it either in pleadings, argument, testimony or written documents. No one would have thought of it. * * * [F]or this difficult concept to be thrown into the jury's mind at the last minute without much explanation was almost sure to have left it in confusion. * * * [T]his new matter coming in at the end was enough to confuse the most conscientious jury." Seaboldt v. Pennsylvania R. R., supra, 290 F.2d at p. 300.

We think that the Seaboldt decision cannot be regarded as determining the appeal at bar. As we have said Seaboldt was decided on grounds other than that

of error in the charge. The language of the court relating to that issue is, at most, dictum.[14] Moreover, it appears from the language of the opinion as quoted above, that this court's primary objection to the inclusion of assumption of risk in the charge was that the doctrine was "thrown into the jury's mind at the last minute" without clear explanation of the doctrine and its relation to comparative negligence. See Seaboldt again at p. 300 of 290 F.2d.

Nor is De Pascale v. Pennsylvania Railroad Company, 180 F.2d 825 (3 Cir. 1950), helpful to the defendant. In the cited case a railroad conductor brought suit against the railroad under the Federal Employers' Liability Act for injuries suffered as the result of a fall while he was walking in the train yard. The plaintiff testified that the ground beneath his feet had simply given way and his leg "went down into the hole completely." He further testified that the ground "looked just like the rest, it seemed solid." At the close of the evidence, the plaintiff requested that the court charge the jury with respect to the inapplicability of the doctrine of assumption of risk. The request was denied. On the appeal by the plaintiff from an adverse judgment, we affirmed on the ground that the failure to include assumption of risk in the charge was not error. Judge McLaughlin stated: "Assumption of risk was definitely not important in this case. There was no suggestion regarding it during the course of the trial. Under the circumstances, though not specifically referred to, it was sufficiently covered by the charge. The charge * * * directly instructed the jury that if they found the railroad at fault and that the fault contributed proximately to the accident, then it became simply a question of how much damages

14. Judge Goodrich prefaced his discussion of the charge with the following: "There is another point with regard to the conduct of the trial which comes very close to being grounds for a new trial even though we are not compelled to say that it is alone sufficient." Moreover, at the conclusion of his discussion on the charge issue, Judge Goodrich stated: "In view of the fact that we are already ordering a new trial we do not need to decide whether the * * * objection was timely taken or sufficiently taken." Seaboldt, 290 F.2d 296, 300.

appellant was to be allowed." De Pascále, supra, 180 F.2d at pp. 826, 827.

■ An examination of the facts in the cited case reveals a clear distinction between them and those of the case at bar. De Pascale's injury, as we have said, was sustained as the result of a ground cave-in beneath his leg. By his own testimony, quoted above, De Pascale made it clear that he was not aware of any possible danger. In the case at bar, Koshorek had worked for many years in the shop and testified that he had long been aware of dust in the air. It therefore appears, we think, that assumption of risk was not involved in the factual situation in De Pascale, but was presented by the circumstances in the case at bar. See Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Blair v. Baltimore & Ohio R. R., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490 (1945). See also Prosser, Torts, supra.[15]

Atlantic Coastline R. Co. v. Burkett, 192 F.2d 941 (5 Cir. 1951), presents a useful analogy to the case at bar in that circumstances were present in Burkett which strongly suggested assumption of risk by him. Burkett and another repairman were carrying a heavy rail, one holding up each end, with the plaintiff walking backwards. He sustained injuries as the result of tripping over a pile of debris lying on the ground. The court charged the jury with reference to assumption of risk. "I charge you further * * * that in any action brought against any common carrier under * * * [The Act] to recover damages for injuries to any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury resulted in whole or in part from the negligence of * * * such carrier." The Court of Appeals for the Fifth Circuit held that the inclusion of a reference to assumption of risk in the charge to the jury

was proper. "[W]e think that the trial judge was justified in thinking that in the absence of a charge on assumption of risk, the jury might have considered that defense under the guise of nonnegligence. * * *" Atlantic Coastline R. Co. v. Burkett, supra, 192 F.2d at p. 943.

Koshorek testified that the air in the shop contained dust and it follows that he either knew or should have known that inhalation of excessive dust over an extended period of time might cause him harm. Because of this the jury reasonably could have believed or inferred that he himself was responsible for the harm that befell him. As we have said, the trial judge instructed the jury on the applicability of the doctrine of comparative negligence but did not distinguish and exclude from its scope those aspects of the plaintiff's conduct with regard to his employment which, prior to the 1939 amendment, would have been categorized as the doctrine of assumption of risk. He should have done so for the distinction between the two kinds of conduct is often very difficult even for a court to make and a jury of laymen scarcely can be expected to do so successfully. The difficulties of making the distinction are suggested in Potter v. Brittan, supra, and vividly in Schlemmer v. Buffalo, Rochester & Pittsburgh Ry., 205 U.S. 1, 12–13, 27 S.Ct. 407, 409, 51 L.Ed. 681 (1906), wherein Mr. Justice Holmes stated: "Assumption of risk in [the] broad sense obviously shades into negligence as commonly understood. * * * But the difference between the two is one of degree rather than of kind; and when a statute exonerates a servant from the former, if at the same time it leaves the defense of contributory negligence still open to the master, * * * then, unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of risk under another name."[16] Had an ade-

15. Issues of contributory negligence and assumption of risk are, of course, generally questions of fact for the jury. See ■

Ramsouer v. Midland Valley R. R., 135 F. 2d 101 (8 Cir. 1943).

16. Although the Schlemmer case was decided prior to the enactment of the Fed-.

quate distinction between conduct constituting contributory negligence and that which would have constituted assumption of risk been pointed out to the jurors in the charge, the jury might well have reached a different verdict. In our opinion the failure to charge properly as to this distinction constituted reversible error under the circumstances.

Koshorek asserts also that certain evidence given by Dr. David N. Bishop, the Medical Director of the Railroad at Altoona, was admitted erroneously over timely and adequate objection. The testimony we refer to was a summation by Dr. Bishop to the effect that over 8,000 X-rays of the lungs of the Railroad's employees, taken by the Railroad some years after Koshorek ceased to be employed in Shop No. 1, failed to show the presence of silicosis. It was clear that Dr. Bishop had not examined the X-rays himself but that they had been examined by a part-time radiologist in the Railroad's medical department. At sidebar the Railroad's counsel made the following offer of proof: "[I]t is my intention to prove by this witness that of the 8,000 X-rays taken, they were taken of employees who worked in the Altoona Shops * * * either a number of years * * or only a few years, that at the present time [June 1961] there are only 5,000 employees in the Altoona Shops; that on the basis of the X-rays, the X-ray findings of the persons employed in the Altoona Car Shops, the Altoona Works, there has not been one instance of silicosis shown by those X-rays.

"My purpose in introducing this evidence is to establish, one, that if there is a silicosis hazard in Altoona and if silica is present in these shops in sufficient quantities to cause silicosis, then it would be only reasonable to expect that more than one person would be complaining or would have silicosis. Silicosis is not something you are particularly suscepti-

ble to. If you are placed in a room and there is sufficient concentration there and you are there over a period of years, you will develop silicosis. It seems to me in view of the fact that we have had the testimony of Drs. Brieger and Theodos who have had no familiarity with the shop at all, who have never even been there and made a conclusion that they think there is a causal connection between that shop, the working conditions of that shop, and the condition of the plaintiff, that I am entitled to pursue this line of questioning with Dr. Bishop."

Koshorek's counsel objected, saying, "I do not consider that the testimony to be elicited from this witness can come in unless the doctor in question can say that he has personally examined one of the employees, particularly the employees who have worked in this particular shop, and that he is familiar with their physical condition and their X-rays, and he can say they do not have silicosis." The court said: "In other words, you are entering a general objection on the ground that you have just stated?" Upon Koshorek's counsel answering in the affirmative, the court immediately made its ruling, stating, "I will permit the testimony. I will overrule your objection and allow you an exception. I think the jury will have to evaluate this case in light of the situation prevailing in Altoona."

It will be noted that Koshorek's objection was broad indeed and that it may be considered as an objection to the admission of the X-rays on the ground of hearsay, as it is now contended, though that word was not used. It is possible that other serious grounds of objection, such as failure to lay an adequate foundation for the testimony of Dr. Bishop or even the remoteness of the time when the X-rays were taken from the date of the termination of Koshorek's employment, may lurk in the words used by counsel. Of this we cannot be sure

eral Employers' Liability Act, it is nonetheless quite pertinent. The relevant statute in Schlemmer was the Safety Appliance Act of 1893, 27 Stat. 531, which provided *inter alia* that assump-

tion of risk was not a defense to an action for damages brought by an employee against a railroad where the injuries were the result of the railroad's violation of the Act's safety requirements.

and we can perceive no reason, since the case must be retried, why we should speculate as to what counsel had in mind or as to the basis on which the trial court admitted the testimony. The objection indeed lacks clarity, as the Railroad points out, and does not meet the requirement of Rule 46, Fed.R.Civ.Proc., 28 U.S.C.A., which provides that an objection to the admission of evidence must specify clearly the "grounds therefor".

It would be well to have the scope of Dr. Bishop's testimony delineated as precisely as possible at a pretrial conference and that the parties brief the difficult subject of the admission of the X-ray testimony adequately.[17]

We desire to make it plain that we do not presently rule on the admissibility of any of the evidence received at the trial from Dr. Bishop.

The judgment will be reversed and the case remanded for a new trial with the direction to proceed in accordance with this opinion.

GANEY, Circuit Judge (dissenting).

I dissent from the result here reached by the majority.

It is here held that the failure of the trial judge to distinguish between the doctrine of assumption of risk and that of contributory negligence, under the factual situation obtaining, is reversible error.

It is of first importance here to remember, (1) that the jury having heard nothing about the doctrine of assumption of risk from any witness in the case, or from any pleading, document, etc., or from the court, it, accordingly, was ignorant of any consequences flowing from such doctrine; and (2) that this Court found no quarrel with the trial judge's charge with respect to negligence or contributory negligence, as such, and, affirmatively, it must be said that the charge with respect to these matters was clear and precise, but only that its fail-

ure, as has been adverted to above, to differentiate assumption of risk from contributory negligence was fatal error.

The facts here are neither peculiar nor unique and turn only on the question of the alleged negligence of the defendant in maintaining a hazardous silicon condition in the shop where the plaintiff worked for eighteen years and, as a result thereof, contracted silicosis. A verdict was rendered for the defendant.

The majority believe that a more detailed explanation should have been given to the jury by way of defining the doctrine of assumption of risk and states: "Had an adequate distinction between conduct constituting contributory negligence and that which would have constituted assumption of risk been pointed out to the jurors in the charge, the jury might well have reached a different verdict. In our opinion the failure to charge properly as to this distinction constituted reversible error under the circumstances."

In the first instance, it seems to me rather clear, since the verdict was for the defendant, that the jury could have only reached the conclusion it did on the ground, (1) that the plaintiff was not suffering from silicosis, as the defendant's medical experts contended, or (2) that the defendant was not negligent. The jury, accordingly, never reached the question of contributory negligence, for if plaintiff was found suffering from silicosis and not having been found negligent, they could not possibly have gotten to the question of contributory negligence. If by some means they did, there would have been a verdict for the plaintiff for at least one dollar and, of course, if they found he did not have silicosis, they, likewise, would not have reached the question of contributory negligence, as that would have been the end of the case.

Basic to the question here involved, is the amendment to the Federal Employ-

17. We note that the United States District Court for the Eastern District of Pennsylvania uses a central-calendar system and the same judge who pretries a case may not be the judge who tries it.

ers' Liability Act of 1939.[1] In considering the amendment, the Supreme Court, in Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, said, with finality, that every vestige of the doctrine of assumption of risk was obliterated. Furthermore, in Gowins v. Pennsylvania Railroad Co., 6 Cir., 299 F.2d 431, there was occasion to quote Mr. Justice Frankfurter's concurring opinion in the Tiller case, supra, 318 U.S. at p. 72, 63 S.Ct. at p. 453, wherein he stated: "Because of its ambiguity the phrase 'assumption of risk' is a hazardous legal tool. As a means of instructing a jury, it is bound to create confusion. It should therefore be discarded." Further, in the Court's opinion in Gowins v. Pennsylvania Railroad Co., supra, 299 F.2d at p. 433, it was stated: "If the instruction on contributory negligence was a correct one, we do not think it was error to refuse to instruct on the question of assumption of risk. De Pascale v. Pennsylvania R. Co., 180 F.2d 825, 827, C.A. 3rd."

In Seaboldt v. Pennsylvania Railroad Co., 3 Cir., 290 F.2d 296, the sage admonition of the late Judge Goodrich, quoted in the majority opinion, has genuinely compelling force here.

In Potter v. Brittan, 3 Cir., 286 F.2d 521, cited by the majority, it was necessary for the Court to point up both contributory negligence and assumption of risk because in Massachusetts both were available as a defense which, of course, does not obtain in this instance.

In Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, cited by the majority, the plaintiff had worked thirty years as a foreman on steam locomotives and ceased work in May, 1940, because he alleged that over the years he had contracted silicosis because of his inhalation, in the performance of his job, of silica dust in the air which came from the sand used in the locomotive sandboxes and sucked into the cab in which he worked. The holding of the court in reversing the Missouri Supreme Court was that under both the Federal Employers' Liability Act and its implementing Act, the Boiler Inspection Act, this occupational hazard was compensable. Since the amendment to the Federal Employers' Liability Act barring the doctrine of assumption of risk as a defense went into effect in August, 1939, it can be seen that the vast portion of the plaintiff's cause of action was subject to this defense and the only reference to the doctrine, since no instruction with respect to it was asked for and none given, was footnote 18, page 180, of 337 U.S., p. 1029 of 69 S.Ct., which states: "Nor do we find merit in respondent's contention that Urie, prior to the 1939 amendment abolishing assumption of risk as a defense to ordinary negligence suits under the Federal Employers' Liability Act, 45 U.S.C. § 54, 53 Stat. 1404, amending 35 Stat. 66, assumed the risk of injury." Further, in footnote 30, page 188 of 337 U.S., p. 1033 of 69 S.Ct., the Court cites Seaboard Air Line v. Horton, 233 U.S. 492, 503, 34 S.Ct. 635, 58 L.Ed. 1062, which states that previous to the amendment, assumption of risk was a complete defense, but was abolished in 1939. Accordingly, the Court was concerned with a very short period, from August, 1939, to May, 1940, during which the amendment was applicable and there, as adverted to above, it

[1]. In its present form, 45 U.S.C.A. § 54, reads as follows: "§ 54. Assumption of risks of employment. In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case *where such injury or death resulted in whole or in* *part from the negligence of any of the officers, agents, or employees of such carrier;* and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safey of employees contributed to the injury or death of such employee. Apr. 22, 1908, c. 149, § 4, 35 Stat. 66; Aug. 11, 1939, c. 685, § 1, 53 Stat. 1404." (Amendment italicized.)

ruled out any consideration of assumption of risk.

I have no quarrel with Schlemmer v. Buffalo, Rochester & Pittsburgh R. Co., 205 U.S. 1, 12–13, 27 S.Ct. 407, 51 L. Ed. 681, cited by the majority, as Mr. Justice Holmes' treatment of the doctrine of assumption of risk concerns itself with the year 1906 when the doctrine was likewise available as a defense.

In Blair v. Baltimore & Ohio R.R., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490, also cited by the majority, suit was brought by the plaintiff against the defendant in the Allegheny County Courts for injuries occurring on June 26, 1939, under the Federal Employers' Liability Act for negligence which, as can be seen, was previous to the 1939 amendment. After the plaintiff had secured a verdict, a new trial was granted by the trial judge because he alleged he erred in submitting to the jury defendant's liability for failure to provide adequate equipment for the work, as well as failure to provide sufficient help, and the carelessness of its employees, and that after reflection, he concluded there was no evidence adequate to support these findings and, as has been adverted to, allowed a new trial. Both parties appealed to the Pennsylvania Supreme Court, which reversed the matter, holding that the petitioner had assumed the risk of injury by remaining in the employment and that there was no evidence to support negligence in any respect. Here, the Supreme Court reversed the judgment of the Supreme Court of Pennsylvania, and remanded the case for a new trial. It is stated at p. 605 of 323 U.S., at p. 548 of 65 S.Ct.: "The court below, however, thought that the plaintiff should not recover because he had assumed the risk of this danger. It is to be noted that at the time this case was tried Congress had passed an act which completely abolished the defense of assumption of risk. 53 Stat. 1404. Tiller v. Atlantic Coast Line, supra."

In Atlantic Coast Line R. Co. v. Burkett, 5 Cir., 192 F.2d 941, which the majority cites, the defendant adverted, in his answer, that any injuries sustained by the plaintiff resulted entirely and solely from his negligence which, in effect, was the doctrine of assumption of risk under another name. In view of this, the trial court's charge stated, at page 943 of 192 F.2d: "I charge you further, gentlemen of the jury, that in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." The Court of Appeals then went on to say: "Other parts of the charge emphasized the necessity of proof of the defendant's negligence as a prerequisite to a verdict for the plaintiff." The Court then stated, by way of affirmance of the trial judge's charge, the following: "Under the pleadings and evidence in this case, we think that the trial judge was justified in thinking that in the absence of a charge on assumption of risk, the jury might have considered that defense under the guise of nonnegligence. As said in the Tiller case, supra [318 U.S. 54, 63 S.Ct. [444] 447 (87 L.Ed. 610) ]: 'Unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of risk under another name' ". It is apparent here that by reason of the pleading, particularly the answer, that there was justification for the court advising the jury that the plaintiff did not assume the risks of his employment, which is a far cry from giving a mandate that the court must bring the doctrine into play without any necessity therefor, shown by the defendant in any pleadings, evidence, documents, etc. The case is distinguishable on this ground, for otherwise it would be against the weight of authority.

In Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101, cited in the majority opinion, footnote 15, the injury occurred on January 10, 1937, and, of course, discussion of assumption of risk

in connection with negligence was perfectly proper since the accident took place before the amendment of August, 1939.

Therefore, it would seem, in the light of precedent to date, that the doctrine of assumption of risk is non-existent and, although the phrase is sometimes loosely used, it merely means that the defendant is not negligent, as Mr. Justice Frankfurter points out in his concurring opinion to the Tiller case at p. 69 of 318 U.S., at p. 452 of 63 S.Ct. "Industrial enterprise entails, for all those engaged in it, certain hazards to life and limb which no amount of care on the part of the employer can avoid. In denying recovery to an employee injured as a result of exposure to such a hazard, where the employer has in no sense been negligent or derelict in the duty owed to his employees, courts have often said that the employee 'assumed the risk.' Here the phrase 'assumption of risk' is used simply to convey the idea that the employer was not at fault and therefore not liable."

However, the trial judge, here, in order to properly comply with the opinion expressed by the majority, would, of necessity, have been compelled to define to the jury the common law doctrine of assumption of risk in its entirety, since the plaintiff's conduct embraced the whole factual area, and then to properly instruct them on the doctrine of contributory negligence. Since the amendment of 1939 abolished the doctrine of assumption of risk as a defense, it is extremely difficult to determine to what effect, and what purpose, this differentiation would have served. It can no longer be doubted that the doctrine of assumption of risk as a defense to any liability, where there is negligence on the part of the employer, has been written out of the Act, and if it cannot avail itself of this defense in the main action, it, of necessity, must follow that it is written out of the Act where it pleads the contributory negligence of the plaintiff, a defense making for mitigation of its liability.

If the purpose of the majority here required the trial judge to warn the jury that risks, knowingly taken by the plaintiff, obviously observable to him, and acquiesced by him over a period of time, were not to be considered by the jury, in its determination of whether the plaintiff was contributorily negligent, it would be an almost insuperable task for the trial judge to distinguish for the jury this factual area, from that area in which the plaintiff's conduct is to be measured by the standard of due care under the circumstances. This for the reason that the risks, adverted to above, would be a complete bar to the plaintiff's recovery, while violation of the standard of care required of him would be only partially so.

It is sufficient to say that since the amendment of 1939, one must consider the whole ball, due care under all the circumstances. This latter phrase envelops the whole factual area of the plaintiff's conduct and takes into consideration all of the conditions surrounding his employment, and if he is injured by the obvious and that which is plainly observable, to that extent he violates the standard of care imposed upon him and his recovery in damages is mitigated to that degree from that which he would otherwise recover under the doctrine of comparative negligence as provided for in the Act. Additionally, to contrast a doctrine no longer available as a defense with contributory negligence, which is available, to mitigate damages to the defendant, would seem to me to be a futile gesture insofar as it might be helpful to the plaintiff.

So under the proper charge given by the court, what the jury was concerned with and what the plaintiff does assume are not the risks of his employment, since the amendment, but the risk of economic loss occasioned by his violating a standard of care to which he is held.

Again, to detail this legal refinement, even assuming something of vigor does remain in the doctrine, would make it requisite for the trial judge to spell

out with clarity and precision concepts which one skilled in the law finds no little difficulty with. On the other hand, the capacity of the ordinary juror, in its proper understanding, if not completely beyond his normal talents of discernment, at least poses to my mind such a formidable risk of his confusion that a far stronger case is made for its rejection than acceptance.

I would affirm the judgment of the lower court.