Harry G. **SEABOLDT**

v.

**PENNSYLVANIA RAILROAD COMPA-NY** (Defendant and Third-Party Plaintiff), Appellant,

v.

**THOMPSON MAHOGANY COMPANY** (Third-Party Defendant).

**Nos. 13444–13446.**

United States Court of Appeals Third Circuit.

Argued April 6, 1961.

Decided May 8, 1961.

Rehearings Denied May 26, 1961 and June 20, 1961.

B. Nathaniel Richter, Philadelphia, Pa. (Charles A. Lord, Richter, Lord & Levy, Philadelphia, Pa., on the brief), for plaintiff.

F. Hastings Griffin, Philadelphia, Pa., (Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for appellant.

Lynn L. Detweiler, Philadelphia, Pa., (Swartz, Campbell & Henry, Philadelphia, Pa., on the brief), for third-party defendant.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment against the Pennsylvania Railroad for personal injuries suffered by Harry G. Seaboldt, the plaintiff, and against the Railroad in its action against Thompson

Mahogany Company (Thompson), third-party defendant.

The plaintiff alleged injury from a back strain suffered when he was endeavoring to open a gate which led into Thompson's premises. The Railroad had a siding into Thompson's yard. This siding was protected by a gate which was kept locked. When railroad cars were taken to or from the siding it was, of course, necessary to unlock the gate and close it again after the operation was completed. The Railroad claims that Thompson is responsible for any damages the plaintiff recovers because of an indemnity agreement between Thompson and the Railroad.

The provisions of this contract on which the Railroad's claim is made are two. First that Thompson promised to maintain the sidetrack and all appurtenances.[1] Also that Thompson promised "to indemnify and hold harmless the Railroad company for loss, damage or injury from any act or omission of the Industry * * *."

What is the obligation of Thompson under this contract? In this case the jury found for the plaintiff against the Railroad under the F.E.L.A. It also found that Thompson was not negligent toward the plaintiff and was not liable to the Railroad under any common-law theory.[2] Is Thompson liable under this contract to indemnify the Railroad even if the jury has found that the Railroad was itself negligent?

Counsel cite a great many decisions in the discussion of this indemnity question. The meaning of words in a contract is nearly always the subject of much argument. Sometimes a word or two will produce a series of consequences. For instance, when a man indorses a negotiable instrument in blank the indorser assumes many liabilities and the indorsee acquires many rights. A simple signature does it. Sometimes, too, the attainment of a given result depends upon the exact form of words used. A typical example is the necessity of the word "heirs" to create a fee simple at common law. In other instances, usage of a particular trade may describe in shorthand what people in the trade mean by a given word or phrase. Who would know the difference between "prime" and "choice" beef unless he had been instructed by an expert in the trade? When a word or a phrase has been made the subject of a series of rulings by a court in a given state, we may then conclude that the use of those words accomplishes the result which the line of decisions indicate. So, if we had a series of cases dealing with a contract like the one before us and the court had ruled that under those terms the promisor was or was not liable for certain results, we could take that series of rulings as the law governing the effect of those words. We have no such situation here,[3] and, therefore, determine for

1. In its brief Thompson concedes that a proper reading of the construction and maintenance provisions of the contract requires the Industry to maintain the appurtenances as well as the track itself although the maintenance provision alone does not make that clear.

2. The trial judge decided the contractual indemnity theory himself. See text *infra.* We do not think that there should have been any issue of common-law indemnity in the case, since we construe the contract to have established the sole basis for indemnity.

We do accept the jury's finding that Thompson was not negligent for there were no errors in the trial which affect that finding. That issue need not be tried again. This is similarly true of the case of the plaintiff against Thompson.

3. It is true that the same or similar words as used in this siding agreement have been presented to the courts before. See Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., 3 Cir., 1955, 218 F.2d 207; Foster v. Pennsylvania R. Co., 3 Cir., 1953, 201 F.2d 727; Minneapolis-Moline Co. v. Chicago, M., St. P. & P. R. Co., 8 Cir., 1952, 199 F.2d 725; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695. In these cases there was conduct on the part of the industry that could be construed as negligence, so that language to the effect that "negligent" conduct by the industry is required to

ourselves the effect of the words used by the contracting parties.

It is to be pointed out that we are not now dealing with passive or active negligence nor any question of indemnity or contribution between tortfeasors.[4] This is solely a question of contractual liability assumed by Thompson when Thompson and the Railroad made their contract at the time of the installation of this siding.

Since, as indicated later in this opinion, the question of the Railroad's liability must go back for a new trial, the contract is construed on the basis of the legal rights of the parties should a jury again find the Railroad liable. We express no opinion concerning the outcome of the new trial.

■ We think the contract is broad enough to make Thompson liable for the consequences of this accident if the jury should find the Railroad liable. We rely upon the language which Thompson agreed to in entering into this contract. It promised to maintain the siding. It also promised to hold the Railroad harmless for damage from any act or omission. If this gate was in a state of disrepair, that disrepair is certainly due to an omission on Thompson's part to "maintain" all the appurtenances. We think this is the agreement Thompson made. It does not rest upon any tort liability of either party but simply, as a matter of contract, creates the obligation on Thompson as above indicated.

■ The effect of the words in the contract is not a matter for jury interpretation and the trial judge correctly assumed responsibility for deciding this part of the case. He followed the right procedure although we disagree with his conclusion. Thompson is liable under the contract to indemnify the Railroad if, indeed, the plaintiff recovers at the new trial.

### New Trial in F.E.L.A. Action.

At the pretrial stage of this case District Judge Clary directed the lawyers for the respective parties herein "to immediately exchange all medical information and photographs * * *."

Toward the end of the trial it developed that the plaintiff sometime prior to his accident had consulted professionally a chiropractor named Walter.[5] The point about the plaintiff's knowledge of this chiropractor is well and tersely stated by District Judge Ganey who tried the case. He said in his opinion:

"The plaintiff's counsel had previously advised defendant's counsel that he did not know the name nor the whereabouts of this chiropractor

invoke the indemnity provisions is dicta. Cf. Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, 10 Cir., 211 F.2d 785, certiorari denied 1954, 348 U.S. 832, 75 S. Ct. 55, 99 L.Ed. 656; Cacey v. Virginian R. Co., 4 Cir., 1936, 85 F.2d 976, certiorari denied 1937, 300 U.S. 657, 57 S.Ct. 433, 81 L.Ed. 866; Pennsylvania R. Co. v. Erie Avenue Warehouse Co., D.C.E.D.Pa.1960, 193 F.Supp. 471.

None of the cases construing language like that before us has faced the issue presented to us, and we approach the language for our purposes as though it had not been construed before.

4. Other cases have discussed active and passive negligence or something similar in dealing with provisions like that before us but also providing for contribution. See, e. g., Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., 3 Cir., 1955, 218 F.2d 207. We are not faced with that problem here. The agreement provides: "and if any claim or liability, other than from fire, *caused by locomotives* as aforesaid [operated on the siding to serve the Industry] shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally." (Emphasis added.) Injury caused by lifting a gate is certainly not caused "by locomotives," so the contribution provision is inapplicable.

5. In a pretrial deposition the plaintiff disclosed that he had been examined by a chiropractor and the general neigborhood in which the chiropractor was located. During the early part of the trial mention was made of this examination, but the indentity of the chiropractor did not appear in the record until the third of four days of actual trial. The chiropractor *did not appear until the final day after all the parties had rested.*

at the time of trial and previous thereto. However, as was shown at a later hearing, it was plain that the plaintiff's counsel did know the name and whereabouts of Dr. Walter, the chiropractor who treated the plaintiff."

After the evidence from both sides had been received the Railroad requested the judge to reopen the case and hear the testimony of this chiropractor. This was done. Then, following the verdict for the plaintiff, Railroad's lawyer asked the judge for a hearing to determine whether the statement of lack of knowledge on the part of the plaintiff's law firm was true. After a hearing the trial judge made a finding which we quote verbatim.

"And Now, this twenty-first day of December, 1959, the Court makes the finding that the first date that Mr. Richter's law office, Richter, Lord & Levy, in the City of Philadelphia knew of Dr. Walter's identity was April 9, 1959, and this date is herewith made a Finding of Fact in the defendant's motion to determine when the above-mentioned office first learned of Dr. Walter's identity.
"/s/  J. Cullen Ganey,
"Ch.J."

Plaintiff's counsel attacks this finding because, he says, it is not supported by the evidence and is, therefore, clearly erroneous. The best way to determine the soundness of that argument, we thought, was an examination of the testimony both at the trial and at the post-trial hearing. This we have done.[6] The chiropractor was not the best witness in the world but the judge heard him patiently and upon examination of all the testimony which bears on this point we are certainly not willing to say that he came to a conclusion which was clearly erroneous. We, therefore, take his finding of fact.

Now what should the consequence of this failure to disclose in obedience to the prior order be? Plaintiff's counsel says it made no difference. The Railroad's lawyer, had he been duly diligent, it is argued, could have found out all about this chiropractor for himself. Furthermore, if there was anything wrong the Railroad should have moved for the withdrawal of a juror or moved to have the case reopened and the witnesses examined again. We think this gratuitous advice is not very helpful. It is true that we cannot say for a certainty that previous knowledge of this chiropractor's identity and what he was going to say would have changed the case from a verdict for the plaintiff to one for the defendant or have changed the amount of the verdict. But it would have made a difference in Railroad counsel's approach to the testimony of several witnesses. Among these would have been the testimony of the plaintiff himself and that of his wife. The plaintiff's case on the subject of damages was that he suffered this severe injury to his back as a result of the accident which, in turn, was the fault of the Railroad. The chiropractor gave testimony that he had treated the plaintiff previously for a "chronic" back ailment. Cross-examination of both the plaintiff and his wife could have gone much further than it did into this question.

There was also the question of the evidence of Dr. Scott, a neuro-surgeon who appeared as a witness for the plaintiff. No one questions either the professional standing or the complete integrity of this eminent surgeon. But had Railroad's counsel been in the possession of what the chiropractor had to say, it could well be that questions put to the surgeon based on what the chiropractor had said could have had some effect upon Dr. Scott's approach to the medical problem.

6. At argument plaintiff's counsel indicated that there was material included in the record before this Court which was expressly excluded in the lower court and which was not properly before us. We feel no need to do more than indicate that we have not considered the material at all.

As said before, it cannot be stated with certainty that all of this would have changed the result of the case. But, as said by the Supreme Court, a litigant who has engaged in misconduct is not entitled to "the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent." Minneapolis, St. Paul & S.S. Marie Ry. Co. v. Moquin, 1931, 283 U.S. 520, 521–522, 51 S.Ct. 501, 502, 75 L.Ed. 1243.

There is another point with regard to the conduct of the trial which comes very close to being grounds for a new trial even though we are not compelled to say that it is alone sufficient. The able and experienced trial judge gave an excellent charge to the jury. He discussed the case from all angles and presented it in such a way that the members of the jury, if they listened as they were bound to, would have a full understanding of what their problems were. At the end of the charge counsel, as they frequently do, began to offer objections. It is quite understood, of course, that if objections to the charge are to be preserved the objections must be stated then and there and the reasons therefor. Fed.R.Civ.P. 51, 28 U.S.C. One only has to look at trial records, however, to see how many of such objections are not only futile but result in confusion of the jury.

In this case Mr. Richter took exception to that portion of the court's charge on contributory negligence. He claimed what the judge had told the jury was a charge on assumption of risk "which is no defense under the statute." The objection was not well taken. The charge on contributory negligence was clear and accurate. But under pressure of objection the court said to the jury "I want to say to you that this plaintiff does not assume any risk of his employment. The doctrine of assumption of risk has been abolished. There is no assumption of risk in his employment." Railroad's counsel did not raise his voice at that moment. It should be remembered that all this took place immediately after the charge and, no doubt, Railroad's counsel,

who was next, was busy getting ready for what he had to say. At any rate, the record went on for several pages and when the jury was about ready to go out one juror said: "Your Honor, when you referred to assumption of risk, what did you mean?" Then the court gave another paragraph of instruction. Mr. Richter, at this point, undertook to instruct the jury himself and to improve upon the judge's language. He said, "In other words, he does not assume any risk nor assume that anybody else is going to be negligent to him." Then the court added two more lines. Plaintiff's counsel then pressed the judge to tell the jury there was a special act of Congress to protect railroaders under this statute. By that time Railroad's counsel raised an objection. The court did not stop to hear more but immediately had the bailiff sworn and sent the jury out.

It was unfortunate to bring in this business of assumption of risk at this stage of the case. No one had mentioned it either in pleadings, argument, testimony or written documents. No one would have thought of it. Plaintiff's counsel's objection to the judge's charge is not well taken. The line between contributory negligence and assumption of risk is a difficult one to draw. This Court has recently had occasion to discuss it and to point out that fact. Potter v. Brittan, 1961, 286 F.2d 521.

It seems very clear in reading this record afterward that for this difficult concept to be thrown into the jury's mind at the last minute without much explanation was almost sure to have left it in confusion. The case had been hard fought. The charge of the judge had presented the problems clearly and this new matter coming in at the end was enough to confuse the most conscientious jury. In view of the fact that we are already ordering a new trial we do not need to decide whether the Railroad's objection was timely taken or sufficiently taken. Nor do we need to decide whether the matter is so fundamental that the point can be taken up without timely objection. Cf. McNello v. John B. Kelly,

Inc., 3 Cir., 1960, 283 F.2d 96. In view of what we have said it is unlikely that the question will come up in a second trial of the case.

The judgment of the district court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.