255 A.2d 696 (1969)
The PENNSYLVANIA RAILROAD COMPANY, a corporation of the State of Pennsylvania
v.
The STAUFFER CHEMICAL COMPANY, a corporation of the State of New York.
Superior Court of Delaware, New Castle.
June 19, 1969.
Richard E. Poole, Wilmington, for plaintiff.
*697 Warren B. Burt, and Wayne N. Elliott, Wilmington, for defendant.

OPINION
CHRISTIE, Judge.
The Stauffer Chemical Company owns and operates near Morrisville, Pennsylvania, a plant which the Pennsylvania Railroad Company serves by means of a side spur of track. This side track is the subject of a contract between Stauffer and the railroad. Paragraph 8 of the contract provides:
"It is understood that the movement of railway locomotives involves some risk of fire, and the Industry assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage to property of the Industry or to property upon its premises, regardless of Railroad Company negligence, arising from fire caused by locomotives operated by the Railroad Company on said side track, or in its vicinity, for the purpose of serving said Industry, except to the premises of the Railroad Company and to rolling stock belonging to the Railroad Company or to others, and to shipments in the course of transportation.
"The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said side track; and if any claim or liability, other than from fire, caused by locomotives as aforesaid shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."
On the evening of September 29, 1966, James Glasser, a railroad employee, while supervising the movement of cars over the side track, slipped and fell on soda ash covering the track ballast. His wrist was severely sprained. He filed a claim against the Railroad for $2,200. When Stauffer, following notification of these facts, declined to intercede, the railroad settled the claim for $1,000.
For ten years prior to the accident, soda ash on the ballast was an ordinary and usual condition at that general location. Some soda ash would fall directly onto the tracks when Stauffer employees unloaded it from the cars; some would blow into the air, later settling on more distant portions of the siding. On those occasions when Glasser or his co-workers complained to Stauffer foremen about the slippery conditions, the foremen had the unloading area hosed down. However, there is no evidence that a complaint was ever made about the specific area where Glasser fell, nor was it ever washed except by rain.
The railroad now seeks to recover $1,000. indemnity from Stauffer under their contract. A prior opinion in this case (Penn. RR Co. v. Stauffer Chem. Co., C.A. 406, 1967, dated August 1, 1968) granted the railroad's motion for summary judgment as to all issues except as to "whether or not an act or omission of the defendant caused or permitted the substance from defendant's plant to be on the tracks in question at the time and place of the accident". The railroad then submitted affidavits tending to show that an act or omission of Stauffer caused the soda ash to be on the track and renewed its motion for summary judgment. Stauffer amended its answer to raise as an affirmative defense the railroad's acquiescence in the condition of the side track. This is the decision on the railroad's renewed motion for summary judgment.
The contract of indemnity between the parties was made in Pennsylvania where the accident occurred. The parties agree that Pennsylvania law should be applied. Basically the question for decision is this: Notwithstanding that acts or omissions of Stauffer caused the soda ash to be on the track, could acquiescence in such conditions by the railroad amount to such negligence *698 as would make it jointly responsible under the contract for Glasser's injuries?
Although there are no Pennsylvania opinions on the subject, the United States Circuit Court for the Third Circuit has decided a number of cases where the facts were similar to the facts in this case. In the case at Bar. In a note the Court said: F.2d 727 (3rd Cir.Ct.App.1953), a railroad employee had slipped on a tin can lying within six feet of the defendant industry's siding. Paragraph 8 of the indemnity contract in that case is the same as Paragraph 8 of the indemnity contract in the case at Bar. In a note the Court said:
"It is apparent that paragraph 8 of the siding agreement treats of three different situations. The first deals with fire caused by locomotives and attempts to relieve the railroad from loss caused by its own negligence. The second deals with a primary-secondary, active-passive kind of negligence and provides for indemnity for the railroad from loss caused by the primary negligence of [the industry] for which the railroad was also liable but only secondarily so, because of some legal relation to the injured party, as here, that of employer-employee. The third covers the situation of concurring, primary negligence and provides for contribution."
201 F.2d 729.[1] The industry contended that the railroad had acquiesced in the conditions leading to the injury which made its negligence more than passive or secondary; but the Court rejected this argument. Because the presence of the tin can had been unusual it was found that the railroad could not have known of and acquiesced to it. Under such findings the industry was obligated to indemnify the railroad.
Similar reasoning was employed in enforcing the indemnification agreement on which suit was brought in Baltimore & Ohio RR Co. v. Alpha Portland Cement Co., 218 F.2d 207 (3rd Cir.Ct.App.1955). The industry had allowed ice and snow to accumulate at a crossing on its side track which caused the railroad's train to derail. Since snow prevented this condition from being readily discovered by the railroad, its negligence was passive and secondary only, with the result that the industry was liable for full indemnification.
The case of Seaboldt v. Penn. RR Co., 290 F.2d 296 (3rd Cir.Ct.App.1961), though not inconsistent with Foster and Alpha Portland Cement Co., supra in result, apparently rejects their consideration of common-law categories such as passive-active or secondary-primary negligence. The reason for this is fully stated in a footnote:
4. Other cases have discussed active and passive negligence or something similar in dealing with provisions like that before us but also providing for contribution. See, e. g., Baltimore & Ohio R Co. v. Alpha Portland Cement Co., 3 Cir. 1955, 218 F.2d 207. We are not faced with that problem here. The agreement provides: "and if any claim or liability, other than from fire, caused by locomotives as aforesaid [operated on the siding to serve the Industry] shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally". (Emphasis added). Injury caused by lifting a gate is certainly not caused "by locomotives", so the contribution provision is inapplicable. (290 F.2d 298)
The Seaboldt Court, therefore, concluded that the question before it was solely one "of contractual liability".
The full contractual provisions are not set out in Seaboldt, supra; consequently it *699 is difficult to evaluate the construction placed on the language quoted in Footnote 4 of that opinion. However, the same language considered in the context of the entire Paragraph 8 before this Court, must be given a different construction. Otherwise, Paragraph 8 would in effect provide that if the railroad alone caused the fire, then Stauffer alone would bear the loss, but if Stauffer contributed in causing the fire, then both the railroad and Stauffer would share the loss equally. Such a result would hardly have been intended when the parties entered into the contract. Thus, the considerations raised in Foster and Alpha Portland Cement Co., rather than those found in Seaboldt, are held to be controlling here.
Further support for this conclusion is to be found in the later case of Penn. RR Co. v. Erie Avenue Warehouse Co., 302 F.2d 843 (3rd Cir.Ct.App.1962) where the Court stated flatly that "the doctrine of acquiescence limits the recovery of contractual indemnity in Pennsylvania". 302 F.2d 848. Regarding acquiescence, the Court continued:
Basically, we think the concept covers comprehensively a variety of situations in which courts think that a party should be denied indemnity because his own conduct has been so blameworthy and has so contributed to the harm in question that full restitution is inequitable or cannot properly be viewed as within the intended coverage of an agreement to indemnify.
One hallmark of such acquiescence is long continued awareness of a dangerous situation by the indemnitee without either taking any corrective measure or calling upon the indemnitor to do so. * * *
Since the railroad in the Erie Avenue case, supra, had a map of the industry's side track, made periodic inspections thereof and yet for two years made no corrective effort or complaint to the industry despite the warning of its conductor and complaint of its crew, it was required to share the burden of compensating for the death of an employee killed due to inadequate clearance between the track and a wall.
As the railroad in the present case had pointed out, some Courts have found that the industry contracted away its right to rely on the defense of acquiescence. For example, in Lehigh Valley RR Co. v. American Smelting and Refinery Co., 256 F.Supp. 534 (E.D.Pa.1966), the contract of indemnity explicitly contemplated the continuance of certain dangerously narrow clearances and made the industry solely liable therefor. Under these circumstances the doctrine of acquiescence regarding a narrow clearance was deemed an inadequate defense. No comparable circumstances, however, exist in the present case. On the contrary, Paragraph 3 of the agreement states: "Said side track shall be maintained (including removal of ice and snow) and renewed to the satisfaction of the Railroad Company * * *." Absent some autoritative notification that the railroad was not satisfied, Stauffer might well have assumed that the soda ash presented no hazard to the railroad employees.
The foregoing cases establish Stauffer's right to assert the defense of acquiescence.[2] The railroad's uncontradicted evidence shows that acts or omissions of Stauffer's employees caused the soda ash to be present on the ballast where Glasser fell but the evidence also discloses that the presence of soda ash had been an ordinary and nearly constant condition for *700 approximately ten years prior to the accident. While there is some indication that railroad employees complained to Stauffer foremen about the soda ash, the area to which the complaints referred remains unclear. From the facts presented it would not be unreasonable to suppose that Stauffer employees hosed down all portions of track which were the sources of complaint.
Since the defense of acquiescence finds some support in the record, but all the facts pertinent to this defense are not clear, there is an issue for the trier of facts.
Accordingly, the renewed motion for summary judgment is denied.
It is so ordered.
NOTES
[1] This footnote summarizes the reasoning found in Booth Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902, 20 A.L.R.2d 695 (9 Cir.Ct.App.1950) a leading case in the field which discusses in depth the general law of indemnity and explains its application to the sort of indemnity contract under consideration here and in Foster.
[2] The railroad contends that the prior opinion in this case should be read as precluding all but the pure factual issue of what caused the soda ash to be on the ballast. However, nothing in the opinion indicates that the legal significance of facts which entered the record subsequent to the opinion, and which support the defense of acquiescence, might not be considered. That defense having been properly raised by amendment, and no prejudice to the railroad having appeared, Stauffer is entitled to assert it.