## NORFOLK & WESTERN RAILWAY COMPANY

v.

## HARDINGER TRANSFER COMPANY, INC. and Federal Insurance Company.

### Civ. A. No. 74–65 Erie.

United States District Court,
W. D. Pennsylvania.

March 29, 1976.

---

Irving Murphy, Erie, Pa., for plaintiff.

Raymond Hasley, Pittsburgh, Pa., for defendants.

## OPINION

KNOX, District Judge.

The instant case involves the predictable perplexing problems which arise when two well-recognized legal principles come into collision. These are the well known rules of

interpretation of contracts: (1) that a contract of indemnity will not be construed to indemnify the indemnitee against his own acts of negligence unless such indemnity is clearly and specifically provided for; and (2) that all words of a contract must, if possible, be given effect.

The defendant Hardinger Transfer Company (Hardinger) contracted with the plaintiff Norfolk & Western Railway Company (N&W) to load truck trailers onto flat cars as part of their so-called "piggyback" operations in which loaded truck trailers are transported by rail and then driven to the point of destination. The trailers are loaded onto the flat cars by backing the trailer up a ramp leading from ground level to the level of the flat car. The driver of the tractor continues to back up, and the trailer, if aligned, is guided by means of "rub rails" on the flat car deck which confine and retain the trailer as if it were in a trough. Built-in space limitations—possibly as little as two inches on each side of the trailer—prevent any real attempt to maneuver the trailer once it is confined between the guides, and the trailer can only be pushed in more or less a straight path.

On July 14, 1971, Richard Thomas at Erie, Pennsylvania, was engaged in backing up trailers onto flat cars in the course of his employment with Hardinger when, although within the confines provided by the rub rails, the trailer came in contact with a grab iron [1] on the flat car. The trailer was traveling at a slow speed, but the jury could find it bent the grab iron to some extent and the trailer could not be backed further until the grab iron was straightened.

Raymond Capela and Robert Hathy, employees of the railroad, undertook the task of straightening the grab iron. Grab irons were frequently bent, and both Capela and Hathy were experienced in straightening them out. They employed one of the customary methods: using a crow bar to act as a lever to bend the grab iron back to its normal position. Capela and Hathy placed the crow bar in a horizontal position and pushed or lunged against it while on the flat car. Thomas meanwhile, pulled on the bar from below. On the second lunge or jerk against the bar, the bolts on the grab iron gave way and Capela tumbled over the side of the car where he landed on the ground, possibly landing on a metal bridge plate. He sustained serious back injuries.

Believing Capela to have a valid claim against the railroad under the Federal Employers' Liability Act (FELA) and the Safety Appliance Act, N&W settled with Capela for $50,000 plus $1,689.95 of medical expenses. This suit is brought to recover to recover these amounts from Hardinger based on common law indemnity and contractual indemnity. The court directed a verdict on the common law claim in favor of the defendant, and allowed the jury to consider only the contractual indemnity question.[2] The jury found in favor of the N&W and against Hardinger in the full amount of N&W's payment to Capela ($51,689.95). Hardinger has moved for judgment NOV or alternatively for a new trial.[3]

Hardinger alleges some twenty grounds in support of its motions, plus an additional ground in a supplemental motion filed 54 days after the jury verdict and entry of judgment. We will not consider this latter ground as it is untimely under Rule 59 FRCP, which requires that a motion for new trial shall be served not more than 10 days after the entry of judgment.

---

1. See 45 U.S.C. § 4 requiring secure grab irons on each car.

2. Since there was a written contract of indemnity common law, indemnity does not enter the picture: *Seaboldt v. Penna RR. Co.,* 290 F.2d 296 (3d Cir. 1961); *Eazor Express, Inc. v. Barkley,* 441 Pa. 429, 272 A.2d 893 (1971).

3. The jury also answered two special interrogatories as follows:

"(1) Did any act or omission of Hardinger's driver, Mr. Thomas, cause directly or indirectly the injury to Mr. Capela in accordance with the provisions of this contract and the instructions of the court? Yes.

"(2) Was the settlement between the Railroad and Mr. Capela reasonable, prudent and made in good faith considering all the factors which have been testified to in this case? Yes."

Defendant's twenty contentions of error are overlapping, and they can be generally lumped into two contentions. First, it is asserted that indemnity provisions must be narrowly construed and cannot be interpreted as indemnifying N&W against its own negligence in the absence of an explicit provision. Secondly, it is contended that the court instructed the jury erroneously as to the meaning of the contractual language "directly or indirectly", and in effect allowed the jury to hold Hardinger liable without regard to its fault or the fault of N&W.

Our concern in this case is with paragraph 8 of the agreement, and particularly with 8(c).[4] This paragraph makes Hardinger liable for any injuries to railroad employees caused "directly or indirectly, by the acts or omissions of [Hardinger]".

■ At first blush this provision appears to be very broad and to cover any sort of injury or damage caused "directly or indirectly", no matter how remote and regardless of intervening or superseding causes. However, the law disfavors agreements by which a party is indemnified against his own negligence, and a contractual provision will not be so interpreted in the absence of a clear, precise and unequivocal expression to that effect. *Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc.*, 468 F.2d 597 (3d Cir. 1972); *Westinghouse Electric Corp. v. G. C. Murphy Co.*, 425 Pa. 166, 228 A.2d 656 (1967); *Dilks v. Flohr Chevrolet,*

*Inc.*, 411 Pa. 425, 436, 192 A.2d 682, 688 (1963). The rationale for this rule of law is stated in *Perry v. Payne*, 217 Pa. 252, 262, 66 A. 553, 557 (1907):

"We think it clear, on reason and authority, that a contract of indemnity against personal injuries, should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it." [5]

This burden of clear expression is even greater where, as here, the party drafting the agreement seeks its enforcement. *Gimbel Brothers,* supra; *Pa. RR. Co. v. Erie Avenue Warehouse Co.*, 302 F.2d 843 (3d Cir. 1962).

■ Pennsylvania courts have distinguished between situations where the indemnity clause explicitly refers to liability arising from a party's own negligence and those which provide for indemnity against "all liability" or "all loss". Where the indemnity clause does not specifically mention liability or injuries arising from the indemnitee's own negligence, the provision will not be construed to cover the situation

---

4. "8. The Contractor hereby covenants and agrees to assume, and to protect, indemnify, defend and hold harmless the Railroad Company from and against, *any and all liability,* damages, claims, suits, judgments, costs, expenses and losses resulting from:

(a) Injury to or death of Contractor's agents, servants or employees and loss or damage to Contractor's property or equipment while engaged in the services herein described or while on or about the premises of the Railroad Company for any purpose incident thereto, regardless of cause, and whether caused directly or indirectly by the negligence of the Railroad Company, its agents, servants or employees, or otherwise;

* * * * * *

"(c) Except as provided in subparagraphs (a) and (b) of this Section 8, injury to or death of

any person whomsoever (including, but not limited to, employees of the Railroad Company) and loss or destruction of or damage to any property whatsoever (including, but not limited to, property of the Railroad Company) caused, directly or indirectly, by the acts or omissions of the Contractor, its agents, servants or employees, while operating said motor vehicle tractors, while pulling or placing said semi-trailers, while loading or unloading freight, while placing or removing said semi-trailers upon or from said railroad flat cars, and while performing or attempting to perform any other service contemplated herein."

5. Neither party questions that the law of Pennsylvania controls where applicable. The suit is brought under the diversity jurisdiction of the court.

despite broad, all inclusive language that might suggest otherwise. *Dilks,* supra, and *Gimbel Brothers,* supra, are typical examples.

■ We must, of course, look to the intent of the parties making the indemnity agreement. Where this intent is debatable or ambiguous, the indemnity clause should be viewed realistically as an effort by businessmen to allocate between them the costs and risk of accidents apt to arise. See, e. g., *Batchkowsky v. Penn Central Co.,* 525 F.2d 1121 (2d Cir. 1975).

■ Turning to paragraph 8(c), the indemnity provision at issue in this case, we note that it does not contain a specific reference to injuries resulting from negligence by the railroad. On the other hand, it is noted that paragraph 8(a) of the contract specifically refers to situations in which the railroad is negligent. While 8(a) applies only in cases of injuries to Hardinger's employees or property, the absence of similar language in paragraph 8(c) would suggest that no intention to charge Hardinger with N&W's negligence has been made under 8(c). That is, if N&W intended its own negligence to be covered by the indemnity clause, it well knew how to express it. The court concludes therefore, that under *Gimbel Brothers,* supra and *Dilks,* supra, the contract cannot be read to provide indemnity for injuries to N&W employees caused by N&W's own negligence.

The analysis cannot stop here, however, as that would fail to give meaning to the express provision of indemnity for injuries *directly or indirectly* caused by Hardinger's operations. The jury specifically found in answer to special interrogatory No. 1 that Capela's injuries were caused directly or indirectly by an act or omission of Hardinger.[6]

■ Likewise, there is no question that the record discloses possible negligence on the part of N&W, either directly or vicariously through their employee Capela. This negligence could be found in the condition of the grab iron or the bolts securing it or in the method used to straighten the bent grab iron. Likewise, the jury finding as to the reasonableness of the settlement, having been instructed on the law applicable to FELA cases, is an implicit finding of liability and of negligence.

■ A synthesis of these conflicting considerations leads the court to adopt the solution used by the Supreme Court in *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). *Seckinger* involved the interpretation of a government construction contract with the provision that the private contractor " 'shall be responsible for all damages to persons or property that occur as a result of his fault or negligence' ". The Supreme Court applied principles of federal law in that case, including the widely recognized principle that an indemnitee cannot recover for his own negligence in the absence of an express contractual provision so providing in unmistakable terms. In order to give meaning to the language of the contract and to this principle of nonindemnification for one's own negligence, the court held that the United States and the private contractor had agreed that liability be premised on a comparative negligence basis. The contractor agreed to indemnify the United States for the contractor's negligence; the United States, through the Federal Torts Claims Act, was liable for its own negligence. Thus, the United States was entitled to

---

6. Hardinger contends, of course, that the instructions of the court allowed the jury too much latitude in making this finding by not restricting the jury to traditional standards of proximate cause. To instruct the jury as Hardinger requested, however, would have ignored the language of the contract, which is controlling over common law. *Cf. Seaboldt v. P. R. R.,* 290 F.2d 296 (3d Cir. 1961). The jury was instructed that liability could be found only if the act or omission complained of was a substantial factor in bringing about or actually causing an injury, and also that the injury or damage sustained was either a direct or indirect result. "If you find that the accident or injury suffered by Capela was produced, caused or set in motion or operation by the acts of Hardinger employee, then you may find that it was indirectly caused by these acts. In any event, was it the reasonably probable consequence of the act or omission alleged against Hardinger?" (Tr. 393).

indemnity, *but only to the extent of relative degree of fault.* While comparative negligence is not recognized in the tort law of Pennsylvania, there is no reason why the parties cannot contract for its application.

*Seckinger* is not, of course, binding precedent in this case, as it involved the interpretation of a contract different from this one and governed by federal law. We are bound by Pennsylvania law in this diversity action. However, the analysis followed in *Seckinger* appears to be the most appropriate means to give meaning to all of the language of the contract, and to recognize, as Hardinger contends, that Hardinger cannot be held responsible for N&W's negligence when it has not explicitly agreed to be responsible.

 Applying *Seckinger* to the case at bar, the court therefore concludes that the motion for a new trial should be granted and that in the new trial, the jury should be asked to apportion damages on a comparative fault basis. The jury was apparently aiming at some such result as shown by the question asked by the jury foreman at T. 430, but were precluded from proceeding on this basis by the court's instruction.

Since there was evidence to support the answers to the special interrogatories as to whether any act or omission of Hardinger caused the injuries to Capela and whether the settlement was reasonable, the N&W is entitled to hold its verdict as to liability and the new trial will be limited to the question of the amount of damages only.

We will, however, certify pursuant to 28 U.S.C. § 1292(b) that this order involves a controlling question of law as to which there is substantial ground for difference of opinion.

## ORDER

AND NOW, to wit, March 29, 1976, upon consideration of the briefs and arguments of the parties and for reasons set forth in the accompanying memorandum,

IT IS ORDERED that the motion of Hardinger Transfer Company, defendant for Judgment Notwithstanding the verdict be and the same hereby is denied.

IT IS FURTHER ORDERED that the motion of Hardinger Transfer Company, defendant for a New Trial be and the same hereby is granted as to the issue of damages only and the case is ordered restored to the trial list of the undersigned for retrial of said issue only.

IT IS FURTHER ORDERED pursuant to 28 U.S.C. § 1292(b) that the court hereby certifies it is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this litigation.