Frank SIENTKI, as Administrator of the Estate of Raymond Sientki, deceased, Plaintiff,

v.

Frank HAFFNER and Frank W. Haffner and Braun Importing Co., Inc., Defendants.

Frank HAFFNER and Frank W. Haffner, Third Party Plaintiffs,

v.

AMERICAN EXPORT LINES, Inc., Third Party Defendant.

United States District Court
S. D. New York.

Oct. 26, 1956.

436

Abraham M. Fisch, New York City, for plaintiff.

Alexander & Ash, New York City, for Frank Haffner and Frank W. Haffner.

John P. Smith, New York City, for defendant Braun Importing Co., Inc.

William F. McNulty, New York City, for third party defendant.

Rudser & Fitzmaurice, New York City, for Employers Mut. Liability Ins. Co. of Wisconsin.

McGOHEY, District Judge.

Two motions are here considered; one to dismiss a third party complaint, the other to quash a subpoena duces tecum.

### The Motion to Dismiss

█ The plaintiff's intestate died as the result of injuries sustained when he was struck by a bale which fell from a pile near which he was working as a cooper on Pier C in Hoboken, N. J. The plaintiff sued the Haffners and Braun Importing Co. alleging that the deceased's death was caused by their negligence. The Haffners filed a third party complaint, which was later amended, against American Export Lines, Inc. (hereafter called American) which now moves, pursuant to Rule 12(b) of Federal Rules of Civil Procedure, 28 U.S. C.A., to dismiss it on the ground that it fails to state a claim on which relief may be granted. American has submitted an affidavit which has not been controverted, stating that the deceased was an em-

ployee of American and covered by the New Jersey Compensation Act, N.J.S.A. 34:15–1 et seq. I have accepted this and accordingly, as Rule 12(b) provides, will consider and dispose of American's motion as one for summary judgment under Rule 56.

The complaint in the main action, which was brought pursuant to New Jersey's death statute, N.J.S.A. 2A:31–1 et seq., alleges that the deceased was working on the pier close by a pile of heavy bales; that a motor vehicle operated by the defendants' employee at excessive speed, without reasonable and proper control, and contrary to the usual manner in which such vehicles are operated on piers, struck the pile of bales, causing one of them to fall upon and fatally injure the deceased.

In the third party complaint the Haffners, who admit ownership and control of the vehicle, assert three "Causes of Action" in each of which they seek indemnity from American for any damages which they may be required to pay in the main action. They allege that American managed, operated and controlled the pier; that it permitted the areas of ingress and egress on the pier to become and remain cluttered with material piled in an improper and dangerous fashion, all of which constituted a dangerous condition of which American gave the Haffners no notice; and that American "was negligent as to [the Haffners] in other respects which will be pointed out on the trial."

The first "Cause of Action" alleges that American breached the duty it owed the Haffners as its business invitees "of exercising ordinary and reasonable care in keeping and maintaining the premises in a safe and proper condition for the purposes embraced in the invitation." The second alleges that the Haffners were at most only "secondarily negligent" while American was "primarily" so. The third alleges that the Haffners were at most only "passively negligent" while

American was "actively" so. It is not alleged in any of the "Causes of Action" that American's alleged negligence resulted in any harm to the Haffners or to their property.

Since jurisdiction depends on diversity of citizenship and the accident happened in New Jersey, the law of that State must be applied in determining the question of liability.

In Public Service Electric & Gas Co. v. Waldroup,[1] decided in December, 1955, the Appellate Division of the New Jersey Superior Court sustained the trial court's dismissal of a claim for indemnity against one joint tort feasor, by the other, under the following circumstances. A contractor was engaged in a road building operation in an area where Public Service had erected poles to carry a temporary electric transmission line. An employee of the contractor was electrocuted when a fellow employee, operating a dirt moving machine, drove it against and broke a guy wire attached to one of the poles. A portion of the guy wire, having become charged by contact with the transmission line which carried current of high voltage, struck the deceased, killing him instantly. Public Service in rigging the guy wire had improperly installed an insulating device which, if properly installed, would have prevented the current from passing through the portion of the wire that struck the deceased. The latter's representative recovered in an action against Public Service, which then sought full indemnity from the contractor on the ground that the latter had been "primarily" and "actively" negligent while Public Service had been only "secondarily" and "passively" negligent.

The court first considered these contentions without reference to the contractor's defense that recovery was barred by the New Jersey Compensation Act. The court held that, while New Jersey's courts recognize the right of a joint tort feasor who is only "secondari-

---

1. 38 N.J.Super. 419, 119 A.2d 172, 179. Inquiry has disclosed that no appeal was taken and the time within which to do so has expired.

ly" negligent to indemnity from the one "primarily" negligent, Public Service's negligence was clearly not "secondary." This the court defined as negligence which is "not morally culpable but * * * merely constructive, technical, imputed or vicarious." The court also rejected the claim that Public Service was only "passively" negligent while the contractor was "actively" negligent. The rejection of this claim went on two grounds: first, that New Jersey's courts do not favor such a distinction as a basis for indemnity and, second, that in any event Public Service was "actively" negligent in failing properly to discharge its "duty to construct, locate and guard its high voltage transmission lines in such a manner as not to be dangerous to the public and those, to its knowledge, working near and about them, [a duty which] could not be shifted to the [contractor]."

The court next considered whether, assuming New Jersey recognized the right of Public Service to indemnity and the evidence showed its negligence to have been only "passive" and the contractor's "active," the New Jersey Compensation Act barred recovery. While in its discussion the court used only the terms "active" and "passive" negligence, it is clear that the result would have been no different if it had also used the terms "primary" and "secondary" negligence. The question, of course, is, as the court later phrased it, "whether the act bars * * * indemnity when the only relationship between the parties is that of joint tort-feasors." The court held it did; and expressly approved former Chief Judge Learned Hand's forecast made in 1951, in Slattery v. Marra Bros.,[2] as to how New Jersey's courts would answer that question.

 The Haffners, of course, can be held liable in the main action only if the jury shall find that their employee negligently ran their truck into the pile of bales, causing one of them to fall upon and fatally injure the deceased. It is, of course, true that the one bale probably would not have become dislodged and fallen if the bales had not been where they were or if, assuming it to be likely or possible in the circumstances commonly existing on piers, the bales had been so firmly secured as to withstand the force of the truck's contact. But the presence of the bales, even if stowed negligently as the Haffners allege, did not relieve their driver of the duty to operate their truck with the care appropriate in the circumstances existing at the time on the pier so as not to endanger those who, as their driver must have known, were or were likely to be, working in the area. It seems clear that, under New Jersey law as expressed in the decision in the Public Service case, the Haffners' negligence would be deemed both "active" and "primary." Accordingly, the second and third "Causes of Action" pleaded in the third-party complaint state no claims on which relief may be granted under New Jersey Law and, furthermore, if they did, recovery is barred by the New Jersey Compensation Act.

 There remains for consideration the Haffners' first "Cause of Action." As to this they contend their relation to American is not merely that of joint tort-feasor but "some *other relation* * * * viz. that of business invitee" [emphasis in the original]. But certainly that relationship does not imply a promise of indemnity by the invitor, and no express promise is alleged. Indeed it is quite unlikely to have been given or even requested. They further contend that American's alleged breach of duty as business invitor provides a "tort relation" of the kind which was held to be an adequate basis for indemnity in Westchester Lighting Co. v. Westchester Estate Corp.[3] It is by no means sure that New Jersey's courts accept or feel bound to follow the holding in that case.[4] In any event, the court consid-

2. 2 Cir., 186 F.2d 134–139.

3. 1938, 278 N.Y. 175, 15 N.E.2d 567.

4. See 119 A.2d 182.

ered it inapplicable to the facts in Public Service v. Waldroup, supra, although those facts appear similar to those in the Westchester Lighting case. In each, the putative indemnitor had not only breached a duty owing to the putative indemnitee, but the breach in each case resulted in actual harm to the latter; the fractured guy wire in the Public Service case and the fractured gas main in the Westchester Lighting case. However, it is not necessary here to forecast how New Jersey's courts will decide the point if it arises in circumstances which they think require them to do so, because in any event the Haffners do not bring themselves within the facts of the Westchester Lighting case. As noted earlier, they allege no harm to themselves or to their property resulting from American's alleged breach of duty as business invitor, and the mere breach without resulting harm will not support recovery.

■ Accordingly, since under their pleading the Haffners cannot possibly prove any set of facts which would entitle them to recover indemnity from American, the motion for summary judgment will be granted.

### The Motion to Quash Subpoena

■ The Haffners served a notice to examine Employers Mutual Liability Insurance Company of Wisconsin, the liability insurance carrier of American. They also served with the notice a subpoena duces tecum calling for, among other things, the company's "entire compensation file relative to the deceased *including copies of transcripts of hearings*, if any, held pursuant to the Workmen's Compensation Law of the State of New Jersey respecting the accident of December 21, 1955 to Raymond Sientki, an employee of American Export Lines." [Emphasis supplied.] In addition to the foregoing, the subpoena called for similar extensive reports, statements, documents, etc. in the insurance company's files, specified in seven categories. Compliance with the subpoena would require the insurance company to search its entire files to be sure it produced every scrap of paper which related to the accident. Even the most liberal interpretation of the Federal Civil Rules does not countenance such scatter shot procedure. It appears that an official of the insurance company has been examined. If that examination has disclosed the existence of documents which may contain evidence which is or may be relevant or lead to the discovery thereof, the rules, properly understood and used, provide means for their production.

The motion to quash the present subpoena will be granted.

Proposed separate orders on each motion are to be settled on notice.