**LEHIGH VALLEY RAILROAD CO.,**
**Third-Party Plaintiff,**

v.

**AMERICAN SMELTING AND REFIN-**
**ING CO., Third-Party Defendant.**

**Civ. A. No. 31707.**

United States District Court
E. D. Pennsylvania.

July 20, 1966.

John V. McDonald, Joseph Neff Ewing, Jr., Philadelphia, Pa., for Lehigh Valley R. R. Co.

White & Williams, Philadelphia, Pa., for American Smelting and Refining Co.

## OPINION

JOHN MORGAN DAVIS, District Judge.

We have before us the third-party action in a case under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., involving the death of one Andrew J. Mileski, an employee of the third-party plaintiff. The main action between the plaintiff and the railroad has been settled and the third-party defendant, American Smelting and Refining Company, as agreed to the reasonableness of that settlement. The question as to whether the railroad was entitled to indemnity or contribution from the third-party defendant remained outstanding, and this phase of the case was tried before the undersigned without a jury.

## FINDINGS OF FACT

1. This suit was originally instituted by Catherine Mileski, Administratrix of the Estate of Andrew J. Mileski, Deceased, against the Lehigh Valley Railroad Company under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq.

2. The Lehigh Valley Railroad Company (Railroad) joined American Smelting and Refining Company (A. S. & R.) as third-party defendant alleging that A. S. & R. was liable to it for indemnity or contribution under an agreement between them dated June 28, 1948, if the

plaintiff was successful in its suit against the Railroad.

3. Plaintiff's decedent, an employee of the defendant railroad was killed on March 2, 1962, when he was pinned between the side of the shear building and a moving train on a siding in the plant of A. S. & R. at Perth Amboy, New Jersey.

4. The distance between the side of the shear building and the center line of the side-track on which the railroad cars were moving at the time plaintiff's decedent was killed was 6 feet 5 inches, and the distance from a small vertical pipe on the outside of the building to the center line of the track was 6 feet 3⅝ inches.

5. This close clearance between the shear building and the center line of the side-track and between the vertical pipe and the center line was a cause of death of the plaintiff's decedent.

6. The plaintiff's decedent was not wearing loose fitting clothing at the time he was killed and his clothing was not a cause of his death.

7. The plaintiff's claim against the Railroad was settled for $22,500., and A. S. & R. has agreed to its reasonableness.

8. The agreement between the Railroad and A. S. & R. dated June 28, 1948, provided in paragraph "FOURTH":

"FOURTH—It is understood that the movement of railroad locomotives involves some risk of fire, and the Shipper assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage to property of the Shipper or to property upon its premises, regardless of railroad negligence, arising from fire caused by locomotives operated by the Railroad Company on said side-tracks, or in its vicinity for the purpose of serving said Shipper, except to the premises of the Railroad Company and to rolling stock belonging to the Railroad Company or to others, and to shipments in the course of transportation.

"The Shipper also agrees to indemnify and hold harmless the Railroad Company from loss, damage or injury for any act or omission of the Shipper, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or any property of any other person or corporation, while on or about said side-tracks, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

9. The agreement between the Railroad and A. S. & R. dated June 28, 1948, provided in paragraph "SIXTH":

"SIXTH—The Shipper shall keep said side-tracks clear of obstructions, including snow, ice and other debris, and shall not erect or allow to be erected any platform, shed or other structure over said side-tracks or allow any property or material of any kind belonging to the Shipper or to any other party to be or remain on the ground alongside said side-tracks at any point nearer than eight feet (8') to the center line of any straight portion or nearer than eight feet (8') plus the middle ordinate of the forty foot (40') chord thereof to the center line of any curved portion of said side-tracks, and shall not make any changes in the location or construction of said side-tracks, the drainage or all other facilities connected therewith, or construct any pipes, wires, or facilities of any kind whatsoever over, under or along said side-tracks without the written approval of the Railroad Company of the plans and specifications therefor, except as provided in Article Ninth hereof".

10. The agreement between the Railroad and A. S. & R. dated June 28, 1948, provided in paragraph "NINTH":

"NINTH—It is understood and agreed that certain platforms, sheds, buildings, piers supporting runways for traveling cranes and other structures and facilities or portions thereof, heretofore or hereafter erected on the premises of the Shipper alongside or adjacent to said side-tracks, have or may have horizontal clearances which are less than the horizontal clearances prescribed by the provisions of Article

Sixth hereof; that certain sheds, buildings and other structures and facilities and portions thereof heretofore or hereafter constructed or installed on the premises of the Shipper over said side-tracks and also various traveling cranes and other equipment and facilities of the Shipper operated or maintained over said side-tracks have or may have vertical clearances which are less than twenty-two feet (22') above the top of the highest rail of said side-tracks at the various locations thereof; that such clearances are less than the horizontal and vertical clearances required by the Railroad Company and present an operating hazard; that it may be necessary from time to time in furnishing service for the Shipper over said side-tracks for the engines and equipment of the Railroad Company to operate adjacent to, under or in the vicinity of such platforms, sheds, buildings, piers, other structures, cranes and other equipment owned or operated by the Shipper having such reduced clearances; and that it may be necessary for the Railroad Company to operate over hoppers and other facilities heretofore or hereafter located, constructed, maintained and used across and under such side-tracks; and that by reason of and in consideration thereof, the Shipper hereby assumes all risk of and liability for loss, damage and injury, by fire or otherwise, to the property of the Shipper or of the Railroad Company or of any third party and for injury to or death of any officers, agents, employees, patrons or invitees of the Shipper or of the Railroad Company or of any third party, caused by or resulting from such reduced clearances or from the continued location operation, use, repair and maintenance of such existing structures, platforms, sheds, buildings, piers and other structures or cranes and other equipment whatsoever and wheresoever with such reduced clearances or from the future location, construction, repair, maintenance, operation and use of any such structures and equipment whatsoever with either horizontal or vertical clearances less than the clearances required by the Railroad Company or from the location, construction, maintenance, or use of such hoppers or other facilities across or under said side-tracks; and the Shipper hereby releases and agrees to and hereby does indemnify, protect and save harmless the Railroad Company from all claims, demands and actions whatsoever for any such loss, damage or injury to property whatsoever or person whomsoever, including injury resulting in death. The foregoing assumption by the Shipper of risk and liability is not for the benefit of any third party but is an indemnity to the Railroad Company."

11. The Railroad was not negligent in having the front of its shifting engine face eastward on the siding.

12. The Railroad was not negligent in using hand signals instead of vocal signals during the shifting operation.

13. The Railroad was not negligent in shifting onto the siding, at one time, four railroad freight cars with lengths of 42 feet 3 inches, 51 feet 9 inches, 51 feet 10 inches, and 42 feet 3 inches, respectively.

14. The ability of the fireman or the engineer in the cab of the engine to see the point where the plaintiff's decedent had been killed would not have been improved by shifting only two cars at a time.

15. The Railroad was not negligent in failing to stop the train when the plaintiff's decedent was not in view on the roadway between the shear building and the pump house since his job was not to pass signals to either the fireman or the engineer.

16. The Railroad was completely free of negligence in its shifting operation at the A. S. & R. plant at Perth Amboy, New Jersey, on March 2, 1962, except that it failed in its non-delegable statutory duty under the Federal Employers' Liability Act to provide the plaintiff's decedent with a safe place to work.

17. The reasonable counsel fees and other expenses incurred by the Railroad in the preparation and defense of plaintiff's claim amounted to $7,683.06.

## DISCUSSION AND CONCLUSIONS OF LAW [1]

In the light of our findings of fact, we must now turn to the provisions of the side-track agreement between the third-parties dated June 28, 1948 and determine which are applicable here.

It is clear that paragraph "Ninth" specifically imposes ultimate liability on the third-party defendant for the death of any railroad employee "caused by or resulting from" reduced clearance between the tracks and its buildings. Since the death of the plaintiff occurred in this manner the Railroad is entitled to full indemnity under this paragraph unless some other provision or principle supercedes it.

██ The third-party defendant relies on the terms of paragraph "Fourth" which states in part, " * * * if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally." However, the only fault we have found on the part of the Railroad was the breach of its nondelegable statutory duty to provide its employee with a safe place to work. This is a form of "passive or secondary negligence" and is not the type of conduct that comes within the ambit of "joint or concurring negligence." Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co., 302 F.2d 843 (3d Cir. 1962); Baltimore & Ohio Railroad Co. v. Alpha Portland Cement Co., 218 F.2d 207 (3d Cir. 1955); Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902, 20 A.L.R.2d 695 (9th Cir. 1950). See Foster v. Pennsylvania Railroad Co., 201 F.2d 727 (3d Cir.

1953); Baltimore & Ohio Railroad Co. v. American Viscose Corp., 214 F.Supp. 287, 292 (N.D.W.Va.1963) (dictum). If this provision of paragraph "Fourth" were held to encompass all species of fault, the indemnity clause would be meaningless. By its very nature, such a clause presupposes some fault on the part of the indemnitee for otherwise the indemnitee would rarely incur any liability and thus would have no need or reason for recovery over against the indemnitor. Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co., supra, 302 F.2d at 847. Because we have found only "passive or secondary negligence" on the part of the Railroad paragraph "Fourth" cannot be invoked.

██ Since the concept of indemnity is interpreted in light of common law principles, absent anything in agreement to the contrary, we pause to mention the doctrine of acquiescence which can serve to defeat indemnity if the prospective indemnitee tacitly accepts the continuation of a dangerous or unsafe condition. See Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co., supra; Baltimore & Ohio Railroad Co. v. Alpha Portland Cement Co., supra; Restatement, Restitution, § 95. Even assuming without deciding that the close clearance in this case presented an unsafe condition, the side-track agreement here contemplated the continuation of this reduced clearance and specifically provided for indemnity in the case of any injuries or deaths resulting therefrom. Under the circumstances, the third-party defendant has contracted away its right to rely on the doctrine of acquiescence. Anthony v. Louisiana & Arkansas Railway Co., 316 F.2d 858 (8th Cir. 1963), Seaboldt v. Pennsylvania Railroad Co., 290 F.2d 296 (3d Cir. 1961).

In addition paragraph "Ninth" would seem to be devoid of purpose if the doc-

---

1. There is no evidence in the record where the agreement was executed or with what state the agreement or the parties have the strongest contacts. We therefore assume that Pennsylvania law applies although it is evident that the law of New Jersey and New York, the only other jurisdictions that might be involved, is to the same general effect as the law of this State. See Baltimore & Ohio Railroad v. Alpha Portland Cement Co., 218 F.2d 207, 211 (3rd Cir. 1955).

538

trine of acquiescence applied here. The Railroad would never be able to recover except possibly where the third-party defendant suddenly erected a new structure close to the tracks and the Railroad had not as yet had an opportunity to object before the accident. This is certainly not the intent of the contract.

Except for its failure to supply its deceased employee with a safe place to work, the third-party plaintiff was not guilty of any negligence on March 2, 1962 during the shifting of freight cars onto the third-party defendant's siding and has met its burden of proof that it is entitled to full indemnity under paragraph "Ninth" of the side-track agreement dated June 28, 1948.

### ORDER

And now, this 20th day of July 1966, it is hereby ordered that Judgment be entered for the third-party plaintiff, The Lehigh Valley Railroad Company, and against the third-party defendant in the amount of $22,500., plus $7,683.06 for counsel fees and other expenses incurred in the preparation and defense of the plaintiff's claim.