Robert J. ZIMMERMAN, Plaintiff,

v.

Robert D. TIMPANY, Trustee, the Central Railroad Company of New Jersey, Defendant and Third-Party Plaintiff,

v.

FMC CORPORATION, Third-Party Defendant.

No. 71 Civ. 739 (IBC).

United States District Court,
S. D. New York.

June 4, 1975.

Arnold B. Elkind, New York City, for plaintiff; Donald E. Lampson, New York City, of counsel.

Alexander & Green, New York City, for defendant and third-party plaintiff; Robert C. Heidell, Alfred C. Moran, Daniel J. O'Neill, New York City, of counsel.

Fogarty, McLaughlin & Semel, New York City, for third-party defendant; Michael A. Patterson, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

We have before us two motions. The first, by third-party defendant FMC Corporation ("FMC"), seeks to set aside the jury's verdict in this case, pursuant to Fed.R.Civ.P. 59. The second, by defendant-third party plaintiff Robert Timpany, as Trustee for the Central

Railroad of New Jersey ("CNJ"), seeks indemnification against FMC.

On December 9, 1969 at about 5:30 P.M. plaintiff Robert J. Zimmerman ("Zimmerman") was freight conductor on a six-car train being routed onto FMC's sidetrack at Carteret, New Jersey. Zimmerman was riding on a ladder of the first car as it came into the sidetrack and he attempted to slow the move by signalling the engineer with his lantern. Almost immediately thereafter, the engineer blew his whistle indicating trouble. Zimmerman quickly stepped off the car onto the ground. However, the ground was covered with soda ash (a product produced by FMC) and salt which caused him to slip, twisting his right leg and ankle and propelling him into a chain link fence. As a result, Zimmerman suffered a severe injury to his right leg and ankle.

Zimmerman brought a cause of action against CNJ, pursuant to 45 U.S.C. § 51, et seq. CNJ impleaded FMC asserting two claims of indemnification against it: for amounts paid to Zimmerman for his claim, and for $2,208.25 in rerailing expenses.

We presided at the trial between these parties from April 14 to April 17, 1975; the jury determined the liability of CNJ and FMC to Zimmerman. CNJ and FMC stipulated at trial that the Court would decide the third party indemnity claims on the basis of the jury's special verdict. The special verdict, submitted by Court to jury, awarded Zimmerman $22,000, found him not contributorily negligent, FMC primarily negligent, and CNJ secondarily negligent.

FMC now moves to set aside the jury verdict on various grounds. We have considered these claims of error and reject them. No lengthy discussion is warranted. FMC's motion is denied in all respects.

I

In its motion CNJ seeks recovery against FMC under the terms of their "Sidetrack Agreement" (the "Agreement") for the $22,000 paid Zimmerman as a consequence of the jury award, and $2,208.25 expenses incurred in rerailing several of its freight cars which were derailed during Zimmerman's accident.

Pursuant to the terms of the Agreement, liability arising from acts or omissions on or about the sidetrack is to be borne by the parties:

"LIABILITY.

8. It is understood that the movement of railway locomotives involves some risk of fire, and the Industry assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage to the property of the Industry or to property upon its premises, regardless of the Railroad Company's negligence, arising from fire caused by locomotives operated by the Railroad Company on said sidetrack, or in its vicinity for the purpose of serving said Industry, except to the premises of the Railroad Company and to the rolling stock belonging to the Railroad Company, or to others, and to shipments in the course of transportation.

The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said sidetrack. If any claim or liability, other than from fire, caused by locomotives as aforesaid shall arise from the joint or concurring negligence of both parties, it shall be borne by them equally."

The issue before us, then, is whether CNJ's breach of its nondelegable statutory duty to provide its employees with a safe place to work was such "joint or

concurring negligence" so as to limit it to 50 percent contribution from FMC.[1]

As noted, *supra*, the jury has specially found that FMC is primarily negligent and CNJ secondarily negligent in causing Zimmerman's injuries. In such a situation, where the negligence of the industry (FMC) is "active" or "primary" and that of the railroad, "passive" or "secondary", it has generally been held that the railroad against which liability to its injured employee has been determined may recover full indemnity from the industry, here FMC. *B & O R. Co. v. Alpha Portland Cement Co.*, 218 F.2d 207 (3d Cir. 1955); *Booth-Kelly Lumber Co.* v. *Southern Pac. Co.*, 183 F.2d 902 (9th Cir. 1950).

This principle of indemnification is recognized in New Jersey; its law indisputably controls here. *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 N.J. 55, 159 A.2d 97 (1960); *Public Service Electric & Gas Co.* v. *Waldroup*, 38 N.J. Super. 419, 119 A.2d 172 (1955). Further, those federal district courts which have applied New Jersey law in similar F.E.L.A. cases have uniformly held that if the railroad was only secondarily liable and the third party primarily liable, the railroad is entitled to full indemnity. See, *Sientki* v. *Haffner*, 145 F.Supp. 435 (S.D.N.Y.1956); *Flusk* v. *Erie R. Co.*, 110 F.Supp. 118, 121 (D.N.J.1953).

Underpinning many of the decisions cited is the rationale of Section 95 of the Restatement of Restitution, which in substance provides:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, *unless* aft-

er discovery of the danger he acquiesced in the continuation of the condition." (emphasis supplied)

Relying on the last clause (beginning with "unless"), FMC contends that CNJ acquiesced in the dangerous condition and should therefore be precluded from recovery. To support its position FMC cites *Penn. R. Co. v. Erie Avenue Warehouse Co.*, 302 F.2d 843 (3d Cir. 1962) and *Rouse* v. *Chicago Rock Island & Pac. R. Co.*, 474 F.2d 1180 (8th Cir. 1973).

Both cases are inapposite in the present factual context since both involved "long continued awareness of a dangerous situation by the indemnitee [railroad] without either taking any corrective measure or calling upon the indemnitor [third party] to do so." *Penn, supra*, 302 F.2d at 848. Here, in clear contrast, FMC was notified on several occasions and called upon to correct the condition. Further, in *Penn* and *Rouse* the alleged defects consisted of permanent encroachments on to the railroad track. Here, the dangerous condition created by soda ash is by its nature transitory and nonpermanent. Consequently, FMC can find little support in those cases.

In addition we note that the issue of alleged acquiescence was placed before the jury in that part of the Court's charge dealing with primary and secondary negligence.

This is not to say that if a party, for example the railroad, discovers the defective or dangerous condition that it can ignore it and be held only secondarily liable. On the contrary, the law provides that a party will be considered primarily liable if after the discovery of the dangerous condition it acquiesced in the continuation of the condition.

\* \* \* \* \* \*

The railroad would be guilty of acquiescence if it had actual knowledge of a

---

1. CNJ claims it is undisputed that FMC is bound by the Agreement to contribute at least 50% of Zimmerman's recovery and the cost of rerailing. Because of our disposition, *infra*, we do not reach this issue.

94

danger and failed to take reasonable steps to avoid it. But remember the railroad contends that it did not accept, or acquiesce in, the presence of the soda ash. The railroad contends that it complained on frequent occasions about the soda ash to FMC and that it received assurances from FMC that the soda ash would be cleared off the tracks. If you believe that testimony then the railroad would not have acquiesced in the dangerous condition and would not be primarily negligent.

It is plain that the jury had the question of CNJ's alleged acquiescence before it and responded in the negative. The factual issues on this phase of the case particularly were sharply delineated by opposing counsel, thus giving the jury a clear choice. Accordingly, we too find little merit in FMC's contention that CNJ acquiesced; consequently we deny its claim on that issue.

FMC also urges that, pursuant to the indemnity clause of the Agreement (set out above), the railroad can be fully indemnified only if it is free from any and all negligence. This argument is also without merit and we reject it also. If CNJ were free from any and all negligence, then it would never be held liable and would never need to be indemnified. Several decisions have recognized this. In *Lehigh Valley R. Co.* v. *American Smelting & Refining Co.*, 256 F. Supp. 534 (E.D.Pa.1966), in construing a similar sidetrack agreement, the Court held that

by its very nature such a [indemnification] clause presupposes some fault on the part of the indemnitee [railroad] for otherwise the indemnitee would rarely incur any liability and thus would have no need or reason for recovery over against the indemnitor. *Id.* at 537.

See also Annotation, 19 A.L.R.3d 928, 932-36 (1968).

The authority upon which FMC relies is inapposite here. In the cases cited, *Foster* v. *Penn R. Co.*, 201 F.2d 727 (3d Cir. 1953); *Dery* v. *Wyer*, 265 F.2d

804 (2d Cir. 1959); *Ratigan* v. *N. Y. Central R. Co.*, 291 F.2d 548 (2d Cir. 1961), the railroad was found primarily negligent, whereas here the jury declared the railroad secondarily negligent.

Also without legal merit is FMC's contention that CNJ's secondary negligence bars it from recovery of the amounts paid Zimmerman. Accordingly, we reject this position. See Annotation, *supra; Public Service Electric & Gas Co.* v. *Waldroup, supra,* 119 A.2d at 179-81.

II

■ Finally, FMC alleges that CNJ's secondary negligence bars it from recovering the cost of its rerailing expenses. We disagree. The second paragraph of Section 8 of the Agreement (set out above) provides in pertinent part:

"The industry [FMC] . . . . agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry . . . to the . . . *property* of the parties hereto." (emphasis supplied)

FMC's negligent failure to properly maintain the sidetrack resulted in damage to the property of CNJ, a party to the agreement. Clearly, any contention that the secondary negligence of CNJ, consisting solely of the very imputed primary negligence of FMC in failing to safely and properly maintain the tracks, would negate or reduce its specific right to full recovery is untenable.

■ Furthermore, demand for the payment of the $2,208.25 rerailing costs was duly made upon FMC by means of a billing statement dated April 27, 1971. FMC took no exception either to the sum total of said statement or the manner in which it was computed. In fact, since that date FMC has failed and refused to make either complete or partial payment of the account. Such an absence of protest on the part of FMC constitutes an account stated under New

Jersey law. Harris v. Merlino, 137 N.J. L. 717, 61 A.2d 276 (1948).

### III

Accordingly, since we sustain CNJ's position and reject all countervailing arguments advanced by FMC, we hold that CNJ is entitled to full indemnification against FMC in the amount of $24,208.-25, consisting of $22,000 in payment made to Zimmerman and $2,208.25 in rerailing expenses. Let judgment be entered accordingly.

So ordered.

