Stanley PYZYNSKI, Plaintiff,

v.

PENNSYLVANIA CENTRAL TRANSPORTATION CO., and Dayton Malleable, Inc., Defendants.

Civ. No. 74–519.

United States District Court, W. D. New York.

June 16, 1977.

**1046**

Gerard J. Lankes, Lankes, Semple & Waible, Buffalo, N. Y., for plaintiff.

Ogden R. Brown, Brown, Kelly, Turner, Hassett & Leach, Buffalo, N. Y., for defendant Penn Central.

Gerald Bouvier, Miller, Bouvier, O'Connor & Cegielski, Buffalo, N. Y., for defendant Dayton Malleable.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

A jury trial resulted in a verdict for plaintiff Stanley Pyzynski[1] against defendant Dayton Malleable, Inc. ("Dayton")[2] and a verdict of no cause of action against Pennsylvania Central Transportation Co. ("Penn Central"). Dayton has moved to correct the verdict or, in the alternative, for a new trial on the basis of the alleged inconsistency of such verdict.

Plaintiff, while an employee of Penn Central, was thrown from a railroad car while said car was a unit of a Penn Central train operating on tracks on Dayton's premises. This event occurred when the train struck a large steel object which had somehow come to be on the tracks.

It is the position of Dayton that, when a railroad employee is injured in his employment while on property other than the railroad's, the Federal Employers' Liability Act (45 U.S.C. §§ 51 et seq.) ("the Act") mandates either a verdict of no cause of action, a verdict against the railroad or a verdict against both the railroad and the landowner. Dayton contends that it is inconsistent to find negligence by the landowner and no negligence by the railroad.

 A jury's verdict is not lightly to be overturned. In determining whether a verdict is consistent, "[t]he general rule that a court should reconcile the jury's verdict if at all possible, *Gallick v. Baltimore & Ohio R. R.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), is entitled to broad application." *Henry v. A/S Ocean*, 512 F.2d 401, 406 (2d Cir. 1975). However, where there is no view of the case that makes a jury's answers to special interrogatories consistent, the general verdict cannot stand.[3]

1. Plaintiff later died as a result of an automobile accident.

2. This defendant originally was named as Pratt & Letchworth. Following the verdict, counsel for said defendant, moved to re-open the record to reflect the circumstances that Pratt & Letchworth was and had been since a date prior to the happening of the accident which gave rise to this lawsuit merely a division of Dayton Malleable, Inc., of Dayton, Ohio, and that Pratt & Letchworth had been theretofore dissolved as a corporation. It was thereupon stipulated that the title to the action and all references in the pleadings should be deemed changed to substitute Dayton Malleable, Inc. in the place and stead of Pratt & Letchworth. Said defendant's earlier motion to dismiss for lack of diversity jurisdiction, on which motion decision had been reserved, was withdrawn.

3. The interrogatories proposed to the jury and the jury's unanimous answers were as follows:
 1. Was there any negligence on the part of defendant Penn Central Transportation Company in failing to furnish plaintiff with a safe place to work, which negligence was a cause of the injury?
 
 NO

2. Was there any other negligence on the part of defendant Penn Central Transportation Company in failing to watch out for plaintiff's safety and to operate its train in a manner which would not cause him damage, which other negligence was a cause of the injury?
 
 NO
 
 If your answer to question 1 or question 2 is "yes", answer questions 3 and 4. If your answers to questions 1 and 2 are "no", disregard questions 3 and 4 and go directly to question 5.
3. With respect to the case against defendant Penn Central Transportation Company, was the plaintiff, Stanley Pyzynski, himself negligent in any way which was a cause of the injury?
 
 _____
4. If your answer to question 3 is "yes", in what percentage did plaintiff Stanley Pyzynski's own negligence contribute to his injury?
 
 _____%
5. Was there any negligence on the part of defendant Pratt & Letchworth Co. [see footnote 2 herein] which was a proximate cause of the injury?
 
 YES

■ The Act imposes upon an employer railroad a nondelegable duty to use reasonable care to furnish to its employees a safe place to work and this duty extends beyond its premises and to property which third persons have a primary obligation to maintain. *Shenker v. Baltimore & Ohio R. Co.*, 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963). The Act does not, however, make the railroad an insurer of its employees' safety. *Inman v. Baltimore & Ohio Railroad Company*, 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959). In order to recover under the Act, a railroad employee must show that he was injured as a proximate result of an accident which occurred in the course of his employment by the railroad and due to the latter's negligence.

■ It is undisputed that plaintiff was an employee of Penn Central at the time of his injury. By its answers to special interrogatories 1 and 2, the jury found the railroad free from negligence. There is no basis for upsetting the jury's verdict that Penn Central was not negligent in any regard other than and beyond its nondelegable duty to provide a safe place to work. Dayton's duty not to obstruct the side track cannot tenably be construed as Dayton's carrying out of Penn Central's "operational activities" so as to impute Dayton's negligence to Penn Central. *Cf. Sinkler v. Missouri Pacific R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958); *Carter v. Union Railroad Company*, 438 F.2d 208 (3rd Cir. 1971); *Carney v. Pittsburgh & Lake Erie Railroad Company*, 316 F.2d 277 (3rd Cir. 1963); *Leek v. Baltimore & Ohio Railroad Company*, 200 F.Supp. 368, 370–71 (N.D.W. Va.1962). Compare, *Ward v. Atlantic Coast Line R. Co.*, 362 U.S. 396, 397–98, 80 S.Ct. 789, 4 L.Ed.2d 820 (1960).

■ Upon argument to correct or set aside the verdict, Dayton cited *Payne v. Baltimore and Ohio Railroad Company*, 309 F.2d 546 (6th Cir. 1962), *cert. denied* 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963), which is close factually to the instant case. Therein the railroad's employee sustained fatal injuries when, in the course of his duties and while riding on a car which the railroad's crew was moving onto an industry's trackage pursuant to a contract seemingly close in its terms to that which was put in evidence here, the car was caused to derail due to a large quantity of ashes which the industry had allowed to accumulate on and between the tracks. It was admitted that the industry was negligent in placing the ashes there and in allowing the condition to persist. The industry appears not to have been joined as a party defendant and a verdict was rendered against the railroad. The latter claimed on appeal that it was error for the trial judge to have charged that the jury was required to impute the industry's negligence to the railroad even though the latter might itself be free of independent negligence. The Court held (p. 549):

> "Defendant owed a duty to decedent Payne. The jury was properly charged by the District Judge. If the jury found liability by virtue of defendant's independent negligence in sending the boxcar on a track having a dangerous condition present which could have been foreseen, the verdict is sound. If it found liability by virtue of imputing the negligence of SUCO [the industry] to defendant, based on defendant's non-delegable duty regarding safety for its employees, the verdict is sound. Regardless of the rights between themselves, of defendant and of SUCO, defendant may not legally dele-

If your answer to question 5 is "yes", answer question 6. If your answer to question 5 is "no", disregard question 6 and go directly to question 7.

6. With respect to the defendant, Pratt & Letchworth Co., [see footnote 2 herein] was the plaintiff Stanley Pyzynski himself negligent in any way which was a proximate cause of the injury?

NO

7. If you have *either* answered question 1 or question 2 "yes", *or* answered question 5 "yes" and question 6 "no", what are the total damages suffered by plaintiff Stanley Pyzynski as a result of the injury? (Do not consider in any way any percentage arrived at in question 4)

$25,000.00

gate to another its duty to its employee, and thereby escape liability to such employee. This is the basis for the FELA [the Act]. If defendant does delegate and relies upon the services of its agent to carry out its own duty, it may not shift its liability from itself to said agent when an employee seeks to hold it directly liable. Under FELA the employer is the one owing the duty to the employee. The employee need not look elsewhere for his protection. He has a right under FELA to rely on his employer and none other. When the employer delegates its duty, or abdicates its control, the employer takes the risk, not the employee. There is ample basis in the record to sustain the jury's finding of liability regardless of which of the two theories it may have proceeded under, that of independent negligence or that of imputed negligence."

The decision itself was not unanimous and the denial by the United States Supreme Court of the application for a writ of certiorari is of no authoritative or precedential value. *United States v. Shubert*, 348 U.S. 222, 228–29, 75 S.Ct. 277, 99 L.Ed. 279, (fn. 10) (1955); *Brown v. Allen*, 344 U.S. 443, 451–57, 488–97, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Agoston v. Pennsylvania*, 340 U.S. 844, 71 S.Ct. 9, 95 L.Ed. 619 (1950); *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 917–19, 70 S.Ct. 252, 94 L.Ed. 562 (1950). Its rationale has not, so far as I have been able to discover, been adopted by the Second Circuit Court of Appeals and has been limited by its patron tribunal to situations wherein there was a contractual relationship between the actor and the carrier owing its employee a safe place to work. *Epling v. M. T. Epling Company*, 435 F.2d 732, 736 (6th Cir. 1971), *cert. denied* 401 U.S. 963, 91 S.Ct. 990, 28 L.Ed.2d 247 (1971). *Payne* was cited and quoted by the same court in *Schiller v. Penn Central Transportation Company*, 509 F.2d 263, 269 (6 Cir. 1975), as the basis for imputing to the railroad the negligence of the contracting served industry as regards poor lighting and ground conditions in that part of the industry's premises where the railroad's em-

ployee was working when injured. The trial jury and the trial court each had separately found the industry negligent due to said conditions and the railroad negligent because of the unsafe condition of the car on which the employee was working and because of the railroad's failure to instruct the employee adequately. The appellate court found such findings to be supported by the evidence. The verdict in the employee's favor had been returned against both the railroad and the industry, which similarly was upheld by the appellate court. Imputation *vel non* had no place in the determination of the case. *Payne's* imputation of negligence holding was cited in *Carter v. Union Railroad Company, supra*, at 211, but therein the court found the negligence to have occurred in and as part of the railroad's "operational activities". *Payne* did not hold, and I do not find, that keeping a sidetrack clear of obstacles such as ashes or steel objects is part of the servicing carrier's "operational activities". If the contrary were true, the maintenance and repairs of a sidetrack such as were involved in *Ward* would also be operational activities and our highest court has ruled otherwise. *Holladay v. Chicago, Burlington & Quincy Railroad Co.*, 255 F.Supp. 879 (S.D.Iowa 1966), presented a neurological ailment and injury due to contact with herbicide which had been sprayed by the railroad's contractee along the tracks. The case was tried to the judge only. *Sinkler* is cited in support of the holding that "the mere fact that the spraying activity was performed by employees of Nalco Company under a contract with defendant does not relieve defendant of fault attributable to employees of said company" (*Id.*, at 883) and *Payne* is cited immediately thereafter in support of the holding that "[d]efendant had a non-delegable duty to furnish its employees a safe place to work". Without mentioning "operational activities" or "imputation of negligence" that district court necessarily proceeded on one or both premises, for the opinion points out that Nalco was "held to the skill of an expert", that there was a duty on its part to warn those who might have come into contact with the chemicals,

that Nalco's product labels warned of possible injury and that Nalco's employees who did the spraying were instructed to wash after having contact with the chemicals and soap and water were provided in the "spray car" for such purpose. It was noted that defendant's employee was not warned and that alerting him to the ambient dangers was defendant's duty. (*Id.*, at 884.) Nalco was not sued. Necessarily, Nalco's negligence in failing to warn was imputed by the court to the railroad with which it had contracted to clear the tracks of weeds. I disagree with this reasoning but would support the conclusion of liability on the carrier's part because the railroad knew that the spraying of chemicals on tracks owned and maintained by it had been completed only hours before its employee in his work would necessarily come into contact with them and it owed him the duty to acquaint itself with any possible danger and to warn him suitably. In *Pennsylvania Railroad Co. v. M.K.W. Corporation*, 301 F.Supp. 991 (N.D. Ohio 1969), the railroad had settled with the decedent employee's estate and was suing for full indemnification from the industry which it contractually served and which owned the trackage on which the fatal accident occurred. Involved were certain iron gates which had been longstanding in their close proximity to the industry's tracks. A contract comparable to that before me obtained. *Payne* was cited re the nondelegability of the railroad-employer's duty to provide a reasonably safe place to work. Further, however, it was noted that the railroad had had full notice of the insufficient clearance of its cars at the gate and had not ceased operations there pending remedying of the dangerous situation. The strictures of Ohio law were applied to the contract between the industry and the railroad to bar full indemnification absent "the mandatory requirement of a definite provision of non-liability for [its own] negligence". (*Id.*, at 994–95.) Both parties were independently negligent and the liability was joint. None of the industry's negligence was imputed to the railroad.

■ Putting *Payne* aside—which I do—the "bottom line" herein is that, unless the performance of an operational activity of the railroad is contractually left to another, there is no room for imputation of the other's negligence to the railroad. In the instant case, Dayton was not carrying out any of Penn Central's operational activities and, as a consequence, no negligence on the part of Dayton can be imputed to Penn Central.

I did not charge the jurors that they must or even that they could impute Dayton's negligence to Penn Central but no exception was taken by Dayton to such omission.[4] I cannot now say whether or how I would have altered my instructions; I am satisfied at this juncture that such alteration was not required or warranted.

■ The sanctity and correctness of the jury's answer to special interrogatory 1 is more to be questioned. Certainly, a contrary response would not be disturbed by me. But, even such response would avail Dayton nothing. Under the Private Side Track Agreement of April 8, 1915 (Ct.Exh. 1), which was in effect on the date of plaintiff's injury, defendants agreed that:

"First: * * * The Second Party [Dayton] shall also keep said track clear of obstructions.

"Second: The Second Party shall not place or allow any temporary or permanent structure, or other obstruction of any kind within the space of twenty-two (22) feet above the said track or within seven (7) feet on either side of the center line of said track. (Keep material and structures eight feet from the center of the track where possible to do so)."

This side track agreement thus placed upon Dayton the duties of maintaining the track clear of all obstructions regardless of source or causation and of not obstructing the track by any act of its own.

---

4. "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Fed.R.Civ.P. rule 51.

The so-called "full indemnity" cases cited in *Wanser v. Long Island Railroad Company*, 238 F.2d 467, 470 (2d Cir. 1956), *cert. denied sub nom. Long Island Rail Road Co. v. Central Islip Cooperative G. L. F. Service, Inc.*, 353 U.S. 911, 77 S.Ct. 668, 1 L.Ed.2d 665 (1957), are enlightening.[5] In *Deep Vein Coal Co. v. Chicago & E. I. Ry. Co.*, 71 F.2d 963 (7th Cir. 1934), the injury to the railroad's employee occurred when he came, in the course of his employment by the railroad on Deep Vein's sidetrack ("Switch track"), in contact with a pole which Deep Vein had positioned dangerously close to such track. The "usual" type of agreement obtained between the railroad and Deep Vein, one provision ("paragraph 8") calling for equal sharing of damages arising from the parties' joint or concurring negligence and another ("paragraph 10") forbidding Deep Vein to "erect or allow to be erected any building, structure, fixture or pile of any kind in dangerous proximity" to such tracks and mandating Deep Vein's full indemnification to the railroad for injury "by reason of or growing out of the location of any such building, structure, fixture or pile". Deep Vein had indemnified the railroad to the extent of one-half of plaintiff's recovery and refused to pay more. The court ruled that indemnity must be full, stating (pp. 964–65):

"The question must be decided under the terms of the contract. If paragraph 10 applies, appellees [the railroad] were entitled to recover; but, if paragraph 8 governs, appellees cannot prevail. The paragraphs are mutually exclusive.

"Appellant [Deep Vein Coal Company] contends that the negligence causing the injury was the joint or concurring negligence of the coal company and the railway, in that the former set its pole dangerously near the switch track, while the latter negligently suffered its track to remain in dangerous proximity to the pole, ·and negligently sent its employe [sic] into this dangerous place to work.

"It seems to us that the joint or concurring negligence covered by paragraph 8 is not the negligence of the one party consequent upon the primary negligence of the other. But, be that as it may, paragraph 10 definitely and specifically covers such a case as this. The paragraph defines the rights of the parties where a liability accrues to the railway by reason of the coal company's placing any structure in dangerous proximity to the track. Paragraph 8 is general. Instances may be readily conceived where an injury is the result of the concurring negligence of the two. Such would in general be covered by paragraph 8. But this particular instance of loss to the railway resulting from the coal company's placing of its structure in dangerous proximity to the track is specifically covered by paragraph 10, which specifies that in such case the coal company will protect, indemnify, and save harmless the railway against loss. The very specific paragraph 10, whenever it applies, excludes the application of the general paragraph 8.

"The coal company did erect its pole in such dangerous proximity to the track, and under paragraph 10 must hold the railway harmless against its entire consequential loss."

In *Booth-Kelly Lumber Co. v. Southern Pacific Co.*, 183 F.2d 902 (9th Cir. 1950), one of the railroad's employees had been injured when he came in contact with Booth-Kelly's wood cart which had been left too near a sidetrack operated and maintained by the railroad pursuant to an agreement, said sidetrack servicing Booth-Kelly's premises. The employee had sued and recovered judgment against the railroad, after Booth-Kelly had declined the railroad's request that Booth-Kelly defend against the claim. Thereafter the railroad sued Booth-Kelly for full indemnification for the amount of said judgment and the railroad's cost of defending the action. The agreement provided for equal sharing of damages where there was joint or concurring negligence and for the industry's indemnification of the railroad where the injury was due to the former's act or omission. The trial

5. See, also, *Zimmerman v. Timpany*, 396 F.Supp. 91 (S.D.N.Y.1975).

court found that Booth-Kelly had been negligent in placing and leaving its wood cart near the tracks and, saying that the railroad was also in some measure also at fault,[6] awarded the railroad 50% indemnification. Both appealed. The appellate court so interpreted the parties' agreement as to give some meaning to the indemnification portion of the agreement, as opposed to its having none or being redundant if it meant that any finding of negligence on the part of the railroad would *per se* bar 100% indemnification. The parties must, the court said, have had in mind the active-passive concepts of indemnification *vel non* under the common law when they entered into the agreement. Because the railroad's negligence comprised only the failure to provide its employee with a safe place to work and Booth-Kelly's negligence was of an active nature, the parties' intention in such circumstances was that Booth-Kelly should be fully responsible. Booth-Kelly was ordered to indemnify the railroad fully. *Atlantic Coast Line R. Co. v. Robertson*, 214 F.2d 746 (4th Cir. 1954), presented an appeal from a judgment against the served industry for $50,000 and a judgment against the serving railroad for $30,000 and the lower court's judgment in favor of the industry on the railroad's claim over for indemnification. Plaintiff was an employee of the railroad and was assigned as an inspector of cars operated by the industry on trackage which served the industry. He was injured due to the negligent operation by the industry of one of its engines. The judgment against the railroad was upheld for breach of its nondelegable duty to furnish a safe place to work, which duty "existed even though the work was to be performed on another's property". *Id.*, at 751. The railroad was, nevertheless and on the basis of an indemnification agreement, entitled to full recovery over against the industry. *Baltimore & Ohio R. Co. v. Alpha Portland Cement Co.*, 218 F.2d 207 (3rd Cir. 1955), was an action by a railroad against a served industry for damages recovered against the railroad by one of the latter's employees who had suffered injuries when one of the railroad's trains had been derailed due to accumulated ice at a vehicular crossing of the side track located on the industry's property. The terms of the side track agreement were substantially identical to those in effect between Penn Central and Dayton. The employee had recovered from the railroad due to the latter's failure to furnish him a safe place to work. On the trial of the railroad's action for indemnification, it was found that the industry was negligent in creating the unsafe condition and in failing to remedy it. Full indemnification was awarded and the industry appealed. The appellate court affirmed such award on the basis of the side track agreement which it said must have been entered into with the concepts of common law indemnification based on active negligence versus passive negligence in the parties' minds.

If the jury's answer to special inquiry 1 had been or were now to be "corrected" to "yes", Penn Central would be entitled to full indemnity from Dayton by virtue of their side track agreement. Included in paragraph SIXTH of said agreement is an indemnity clause which reads as follows:

"As to loss arising from any other cause [*i. e.*, besides fire caused by Penn Central's locomotive] each party shall indemnify the other for and save harmless from, all loss of property and life and injury to property and persons arising out of the use of, or occasioned by, the maintenance of said track, as follows:

The Railroad Company assumes all responsibility * * * for injury to * * * employees of the Railroad Company, when acting as such; except such * * * injury * * * as may be caused by the sole negligence of the Second Party [Dayton], or the agents or employees of the Second Party, when acting as such.

---

**6.** "Some elements of negligence on the part of plaintiff [railroad] concurred to cause the accident." "[T]he railroad was in some measure also at fault which contributed to the accident." These quotations are attributed to the trial court. *Id.*, at 906.

The Second Party assumes all responsibility * * * for injury to * * * all licensees, and of its agents or employees, when acting as such; except such * * * injury * * * as may be caused by the sole negligence of the Railroad Company, or the agents or employees of the Railroad Company, when acting as such; the intent of this agreement being that in case of joint negligence, each party shall bear its own loss * * * "

It is readily seen that this agreement is substantially identical to those construed in the aforementioned "full indemnity cases" and would compel Dayton to indemnify Penn Central fully.

A railroad's right to recover indemnity from a third party for liability incurred under the Act and the interpretation and validity of a contract providing therefor depend entirely upon state law. *Ratigan v. New York Central Railroad Co.*, 291 F.2d 548 (2d Cir. 1961), *cert. denied sub nom. New York Central Railroad Company v. Interstate Commodities, Inc.*, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961). *See also, Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., supra*, 218 F.2d at 211–12; *Brenham v. Southern Pacific Company*, 328 F.Supp. 119 (W.D.La.1971), *aff'd.* 469 F.2d 1095 (5th Cir. 1972), *cert. denied* 409 U.S. 1061, 93 S.Ct. 560, 34 L.Ed.2d 513 (1972). In *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973), the owner of a building who had been held liable because of a nondelegable duty to maintain an elevator sought indemnification from an elevator company with whom the owner had entered into a contract for the elevator's maintenance. In viewing common-law indemnification between vicariously liable tort-feasors and tort-feasors guilty of actual negligence in light of *Dole v. Dow*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) and CPLR §§ 1401 *et seq.*, the Court of Appeals

held that *Dole v. Dow* has no effect, that common-law rules apply and that the owner could seek indemnification from the elevator company. *Waylander-Peterson Co. v. Great Northern Ry. Co.*, 201 F.2d 408 (8th Cir. 1953), was cited, *inter alia*, as an authority.[7] (347 N.Y.S.2d, at 30, 300 N.E.2d 403.) Under the facts of this instant case, Penn Central should be fully indemnified by Dayton. The agreement so intended.

Accordingly, it is ordered that the verdict of the jury be and is hereby affirmed and that a judgment may be entered for and in favor of plaintiff against Dayton in the sum of $25,000 with interest from November 5, 1975.

Submit judgment accordingly.

---

7. In *Waylander-Peterson*, the third party's employees left a timber on a bridge in such a position that it fell, striking the railroad's employee. The court applied the active-passive or primary-secondary test. Inasmuch as the railroad's negligence was secondary or passive, full indemnity was awarded under the contract in force between the third party and the railroad.